55  119
83  507

W. F. ORR v. MARY O'BRIEN.

(Case No. 263-3087.)

1. FORCED HEIRSHIP — WILL — COLLATERAL PROCEEDING — LIMITATION.— In March, 1845, a man died leaving a will, and a wife surviving him. By the terms of his will, his wife, who was constituted its sole executrix without bond, was given all his personal and real estate " for and during her natural life-time, to be applied as she may deem best to the support and maintenance of herself " and their children. The will further provided, that in the event of

the wife's death, "*such of the property as may be left*" should be equally divided among the children, and declared it to be the purpose of the testator to make his wife "the unrestrained controller" of his property. The husband died in possession of real estate, several installments of purchase money on a portion of which were yet due the government, and which had been purchased during coverture. In a suit brought by the heirs of the deceased against one in possession claiming under an absolute conveyance from the surviving wife, *held,*

(1) If the disposition of the testator's property attempted by the will was violative of the statute of forced heirship, that fact could render it voidable only, and it could be attacked only by the parties, and in the manner and time, prescribed by law in a direct proceeding had for that purpose.

(2) An absolute conveyance of the property devised, made by the wife, vested title in the purchaser.

(3) The wife could, independent of the will, make a valid conveyance of the community property, to discharge a bond made by the husband to convey title, and to satisfy claims of the government against it for unpaid purchase money.

(4) The remedy upon such title bond was not barred by four years' limitation from and after the period when patent could have issued from the state to the obligee in the bond.

APPEAL from Travis. Tried below before the Hon. J. P. Richardson.

Suit instituted July 29, 1873, appellants claiming the lots in controversy as the heirs of Wm. S. Orr. Originally this was an action of trespass to try title to lots Nos. 7 and 8, in block No. 70, in Austin City; subsequently, by amendment, changed to a suit for partition and to try title. This amendment was filed June 1, 1874. Defendant filed, June 16, 1874, two amended answers, in one of which was pleaded the statutes of limitation and occupancy for more than one year in good faith, with valuable improvements; the other sets up in detail the circumstances under which Mrs. Orr made the conveyances to one Wm. Custard; and also giving fully the consideration for which those conveyances were made, which will be found sufficiently stated in the opinion.

Below will be found a statement of title as claimed and shown by the records:

Said lots 7 and 8, in block 70, according to the plan of the city, abut east on an alley, and west on Colorado street, and are each 46 feet wide by 160 feet long; but in 1849 they were divided by lines run north and south, into three lots, each of which fronts north 53⅓ feet on Bois d' Arc street. This suit involves title to the west lot of the three.

In 1839, at a public sale of Austin City lots, Neri Chamberlain bought lot 8, and James Burk lot 7. On February 20, 1840, all the purchase money for lot No. 8 had been paid to the government, and the patent issued to Neri Chamberlain. Chamberlain conveyed to McLure & Co. on the 6th of March, 1840. James Burk conveyed lot No. 7 to McLure & Co. on the 19th day of February, 1840; and on the 10th of November, 1840, the third installment of the purchase money due the government on lot 7, making $1,350, had been paid, leaving then due $450. The firm of McLure & Co. was composed of W, R. McLure, W. S. Orr, T. S. N. King and Thomas G. Gordon. Gordon conveyed his common interest in lots 7 and 8 to W. S. Orr on the 22d of July, 1840, and T. S. N. King on the 4th of December, 1841. W. R. McLure never paid any money or contributed anything of value to the common fund of the W. R. McLure & Co. copartnership.

Appellants are the children of W. S. Orr and Martha J. Orr.

On the 28th of February, 1842, W. S. Orr executed to Wm. Custard his bond for title to lot No. 5, in block No. 70, and out-lot No. 31, in division O of the Austin City out-lots, thereby obligating himself to cause a patent to be issued therefor to Custard on the 1st day of May, 1842. W. S. Orr died March 3, 1845, without having complied with his bond for title; and leaving a last will,

which constituted his widow, Martha J. Orr, sole execu-
trix and legatee, with full power to dispose of all his
property for the benefit of herself and children, without
bond, and without supervision by or accountability to the
probate court.    This will was duly probated January 26,
1846, in Brazoria county.

Wm. Custard applied to Martha J. Orr for his title to
lots 5, in block 70, and 31, in division O, on the 7th of
September, 1846 — more than four years and four months
after the date when, by W. S. Orr's bond, the patent was
to issue to Custard; and she then made him an instru-
ment purporting to be a conveyance of lots Nos. 5, 7 and
8, in block No. 70, and signed it, "Wm. R. McLure &
Co., by Martha J. Orr, administratrix of W. S. Orr, de-
ceased."   On November 28, 1846, she made another deed
to him for lots Nos. 7 and 8, in block No. 70, and again,
on May 1, 1847, still another to lot No. 5, in block 70, and
No. 31, in division O.

W. S. Orr had, in 1841, brought a suit in the district
court of Travis county to divest out of W. R. McLure
the interest that he apparently had in lots Nos. 5, 6, 7 and
8, in block 70, and died pending the suit.   Defendant
claimed that Custard (the obligee in bond for title) bore
the expense incident to procuring the final decree in that
case, and that he also paid a balance of purchase money
on lots 5 and 7, in block 70, to the government, and also
paid Mr. Orr $50 in coin, in payment of a note he let
Orr have, etc.; which payment, together with his deeds
from Martha J. Orr and the running of limitation, it was
claimed gave him, and gives appellee, the title to lots 7
and 8, in block 70.

Appellants claim title as the children and heirs of Wm.
S. Orr, deceased.

The case was tried June 23, 1875, and resulted in a ver-
dict and judgment for appellee.

The will of W. S. Orr will be found copied in the opinion.

*Smith & Blackburn*, for appellants.

I. As survivor of the community or executrix of the will, Mrs. Orr acted, and could act, only in a fiduciary or trust capacity; and could in that capacity convey nothing except for the payment of community debts of the estate. Now it is pretended by appellee that this was done as thus: That W. S. Orr had, on the 28th day of February, 1842, made a bond for title to Wm. Custard, obligating himself by the 1st day of May, 1842, to make to Custard a title to, not the lots here in dispute, but lot No. 5, in block 70, and lot 31, in division O, and had died in March, 1845, without performing his promise, and therefore Custard held a debt against the community estate and an incumbrance on it, and that to satisfy this claim the conveyances to Custard of these lots were made.

II. Said bond was to be complied with on the 1st day of May, 1842, and, not being complied with, Custard's right of action accrued then, and the statute of limitations began to run against it then; and four years from that date, to wit, May 1, 1846, his right to maintain a suit against Mrs. Orr as survivor of the community or executrix of the estate, became barred. W. S. Orr died, it is true, on the 5th of March, 1845; but there was no law in this state then suspending the running of the statute because of the death of the debtor, though the court below so charged in effect. Such a law was not enacted in Texas until 1852, and even then it remained suspended only until an administrator was appointed. The right claimed by appellee for Custard was not a right to the specific performance of the bond; such a right, we admit, runs with the land, and after the lapse of four years Custard still had the right to demand, and Mrs. Orr was compelled to make him a deed to the lots named in the bond, and did do so on May 1, 1847; but the claim of Custard against the estate of Orr was for damages for failure to pay the last installment of purchase money on lot No. 5 and lot

No. 31, and to make the deed in compliance with the bond; it was a claim for money, and was barred on the 1st day of May, 1846. Glasscock *v.* Nelson, 26 Tex., 150.

III. The 13th and 15th sections of the act of the 28th of January, 1840, absolutely prohibited the parent to disinherit his children except for certain specified causes to be expressed in the will, and which are not found in Orr's will. Pasch. Dig., p. 644, and Rec., p. 83. And this act was not repealed until July 24, 1856, many years after Orr's death. As to the validity, scope and effect of said last will, the court below grievously erred in his charge. Haggerty *v.* Haggerty, 12 Tex., 460. The principle announced in Haggerty *v.* Haggerty, has been re-affirmed in a number of cases. Charle *v.* Saffold, 13 Tex., 94 *et seq.;* Portis *v.* Cummings, 14 Tex., 174.

*Shelley & Moore* and *Sheeks & Sneed,* for appellee.

WATTS, J. COM. APP.— The appellants claim title to one-half of the property in controversy as the heirs of their deceased father, W. S. Orr, alleging his death in 1845, and that the property belonged to the community of their said father and their mother, Martha J. Orr.

Appellee claims title to the whole of the property sued for. The record shows, and both parties claim, a regular title from the sovereignty of the soil down to the estate of Orr, and it is admitted by appellants that there is a regular chain of transfers from William Custard to the appellee. It is claimed by appellee that Custard acquired the title to the lots by and through the last will and testament of said W. S. Orr, and certain conveyances from Mrs. Martha J. Orr to Wm. Custard, the first of which is dated September 7, 1846, and the other November 28, 1846.

To meet this claim of title upon the part of appellee, the appellants claim that said last will and testament was

and is void as being in violation of the statute of forced heirship, which statute was in force at the time of the testator's death. And this is one of the controlling and decisive issues in the case. The will is as follows:

"REPUBLIC OF TEXAS, County of Brazoria:

"To all whom these presents shall come: Be it known that I, William S. Orr, of the republic and county aforesaid, being of sound mind and memory, but laboring under a disease which may shortly terminate my existence, do make and declare this my last will and testament:

"*First.* To my wife, Martha Jane Orr, I give and bequeath the following property, viz.: The place in which I now reside, containing two hundred and fifty-six acres, more or less; one negro boy named Tom, aged about seventeen; one horse, one mule, twelve head of cattle, my stock of hogs, household furniture and farming utensils, and also a headright certificate for six hundred and forty acres, granted me as a citizen of the government of Texas, together with all other property, both personal and real, of which I am at present possessed, for and during her natural life-time, to be applied as she may deem best to the support and maintenance of herself and our children; and in the event of her death, such of the property as may be left to be divided equally among those of our children as shall survive her. The particular object of this bequest is to constitute my wife the possessor during her life-time, and the unrestrained controller of my property, and the guardian and protector of our children, without being subject to the formalities and requirements of the law.

"*Second.* With a view to the object above expressed, I name and appoint my wife, Martha Jane Orr, the executrix of this my will; and it is my particular desire and request that she shall not be required to furnish to the court an inventory or appraisement; that no security as executrix be demanded, and that she shall be no further

subject to the probate court than shall be necessary to probate this will.

"Signed and sealed with my scrawl by way of seal, this twenty-seventh day of February, one thousand eight hundred and forty-five, in the presence of the witnesses hereunto subscribed.

    [Signed]          "WM. S. ORR.   [SEAL.]
"Witness:
   "JOHN M. KIRKMAN,
   "M. W. McKINNEY."

Wm. S. Orr died in Brazoria county on the 3d day of March, 1845, and his will was duly probated in that county on the 26th day of January, 1846.

The will vested in Mrs. Orr a life estate to all of the property. And without, in this connection, pausing to consider whether or not, by its terms, she is vested with absolute power of disposition of the property, it is sufficient to say, if the will is to be deemed valid, her conveyances to Custard vested in him the life estate of Mrs. Orr. And as the evidence shows that she was living at the time of the institution and trial of this case, the appellants could not maintain this action.

Admitting that the testator did, by his will, dispose of his property in such way so as to infringe upon the statute of forced heirship, that did not render the will void, but only voidable at the instance of those affected thereby; and that right, by such parties, must be asserted in the tribunal, manner and time, and against the parties, prescribed by law.

The court, in the case of Steele v. Renn, 50 Tex., 481, held that "an application for the probate of a will is a proceeding *in rem*, and the judgment of the court upon it is binding upon all the world, until revoked or set aside." See also Freeman on Judgments, sec. 608, and authorities cited, to same effect. This principle is sound, for it proceeds upon the idea that, as a court of competent

jurisdiction, upon proper application, adjudicating upon this *thing*, has determined that it is the valid will of the purported testator, that this determination constitutes and is a judgment of a court, and is not the subject of collateral attack. The law makes ample provisions for parties at interest to secure and protect their interests and rights in this respect, by giving them full time, after the removal of all disabilities, to institute a direct proceeding, and thereby have the judgment probating the will revoked, vacated or set aside, and the will declared invalid, provided sufficient grounds exist therefor.

For as was well said in Paschal *v.* Acklin, 27 Tex., 196, "a will is not void because the testator may have attempted to bequeath more than the disposable portion of his estate; it is only voidable to the extent of the excess. The agreement to waive the filing and recording of the will must be construed, as has been said, as an admission that it stands before the court as properly probated. This being the case, to raise the question of its validity in the present suit, would be to attack it in a collateral proceeding. The will, when admitted to probate, is presumptively valid and good. It remains so until its invalidity is established in a direct proceeding between the proper parties, in the proper tribunal."

In that case it was insisted that the will then in question, and before the court, was void, as the same was in violation of the statute of forced heirship; and the court held that as long as the judgment admitting the will to probate was permitted to stand, the will was to be deemed good and valid, and in this respect not subject to be inquired into in a collateral proceeding.

That decision is decisive of the question under consideration. For all the purposes of this proceeding, the will of said Wm. S. Orr must be taken and considered as good and valid. And thus considered, Mrs. Orr's deeds to Wm. Custard certainly conveyed to him her life estate

in and to the property in controversy. During her life, the will remaining duly probated, the appellants cannot maintain an action to recover the property from him or his vendees.

There is also another and an independent view of the matter to be considered; and that is, whether, by the terms of the will, Mrs. Orr is not vested with the power of sole and absolute disposition of the property.

It is well settled that the primary rule in the construction of wills is to ascertain and follow the intention of the testator. Howze *v.* Howze, 19 Tex., 554; Paschal *v.* Acklin, 27 Tex., 193.

All other rules of construction are of secondary importance, and are but auxiliaries in the practical application of this cardinal rule. The language that the will speaks is, that he gives her the property " for and during her natural life-time, to be applied as she may deem best to the support and maintenance of herself and our children." It would seem that he could have intended nothing else than conferring upon her the power of using the property, in whatever manner should occur to her best, in securing out of the same a support for herself and children. If it seemed best to her, she could rent it, exchange it, or make an absolute sale of the same. And this construction gathers strength from what follows. He says, "in the event of her death, *such* of the property as may be left to be divided equally among those of our children as shall survive her." Again he says, the object he has in making the will is to give his wife the unrestrained control of his property, and to effectuate that object he appoints her executrix, and makes her independent of the probate court, even to dispensing with the requirements of returning an inventory and appraisement, and relieves her from giving any security as such executrix.

In looking to the surrounding circumstances to aid in

gathering his intention, we are further confirmed in the opinion that he intended to confer upon his wife, with reference to the property, the absolute and unrestrained power of disposition. The evidence shows that the country was in a disturbed and critical condition. There was almost a total want of civil government in a large portion of the republic; the occasional invasion of the country by the Mexicans, and the frequent incursions by hostile Indians; the removal of the government records, etc., from Austin; the incomplete condition of his title to the Austin City property; and that it was liable to be forfeited by the government at any time because of failure to pay the installments; and the fact that property was of but little value, and money exceedingly scarce.

These are the circumstances attending and surrounding the execution of the will, and aid in shedding light upon the question as to the intention of the testator. We conclude that the will authorized the sale, and that the conveyances from Mrs. Orr vested the title to the property in Wm. Custard; and, as a consequence, the appellants had no title upon which to sustain their action.

There still remains another view of the case to be considered. The pleadings of both parties and the evidence indisputably show that the property in controversy was the community property of Wm. S. Orr and his wife Martha. It is also shown that his bond to Custard was outstanding and not complied with at the time of his death; and that he was, in addition, due the government certain installments on the property, the title to which he had bound himself to have vested in Custard. And that he was also indebted to the government one installment on one of the lots in controversy; besides, his right and title to the property was clouded by the complications growing out of the apparent interest of McClure, to remove which required the expenditure of money.

Under such circumstances, the property being in the

possession and under the control of Mrs. Orr, she, as survivor in community, in the absence of a will, in her right as such survivor could make a valid sale of the community property to discharge these obligations and debts against the community. That there were debts and obligations against the community at the time Mrs. Orr conveyed the property in controversy to Custard is shown beyond any sort of question. And it is as certainly shown, that, by the sale to Custard, these obligations and debts against the community were settled and discharged. We have no hesitation in saying that if Orr had left no will, still, under these facts and circumstances, Mrs. Orr's conveyances to Custard vested in him the title to the property; and in this view of the case appellants could not recover.

The position of appellants, that the title bond, at and after the date when the patent was to issue to Custard, became absolutely a monied demand and nothing else, and that the same was barred by limitation before the conveyances were made to Custard, etc., in our opinion is not well taken. Custard could, it is true, have treated it as a monied demand, and sued on it as such, or he could, at his option, have considered it as a bond for title, and waited on Orr to perfect and have the title to the property vested in him.

Suppose, however, the same did become a monied demand as claimed, and that ordinarily the lapse of four years would bar the claim. It must be remembered that Mrs. Orr had possession and control of the property, and that four years had not elapsed at the death of Orr. Under the authority of Jones v. Jones, 15 Tex., 143, she could have applied the same to the debt.

We are of the opinion that the record clearly shows that the appellants have no title to the property in controversy, and that in no view of the case could they recover; therefore any supposed errors committed by the

court in admitting or excluding evidence, or in giving and refusing charges, would be immaterial, and need not be considered; and so it is with regard to the question of limitation, appellee has the title to the property, and there is no necessity for her to invoke the statutes of repose in defense of her right thereto.

In our opinion, a proper disposition of this appeal is to affirm the judgment.

AFFIRMED.

[Opinion delivered May 2, 1881.]

Ch. J. MOORE did not sit in this case.