REVERSED AND REMANDED.

[Opinion adopted December 16, 1884.]

---

## J. J. FAULK AND WIFE v. ANN R. DASHIELL ET AL.

(Case No. 1642.)

1. EXECUTOR — WILL — DEED OF TRUST.— An executor under a will, vested with authority as such, without the intervention of the courts, to manage and control the estate in his discretion for the interest of the testator's children, in their education, etc., and to "sell, exchange and dispose" of it as he may deem necessary for such interest, has authority under such will to incumber the estate by deed of trust, authorizing the trustee, on the failure to pay money borrowed, to sell the land.

2. CONSTRUCTION OF WILL — SAME.— In such a case the trustee, in default of payment of the loan and selling under the provisions of the trust deed, which authorized him, in the event of a sale, to "make, execute and deliver to the purchaser a warranty deed to the property, signing my (the executor's) name thereto, and I bind myself to warrant and forever defend the same," etc., can make a deed conveying all the interest of the estate in the land to a purchaser; and this, when the executor added the words "as executor of the will," etc., to his signature to the trust deed, and in his capacity as executor acknowledged the said trust deed. In the case decided it appeared that the executor held no other interest in the property than such as he held in his capacity as executor.

3. CONSTRUCTION OF WRITTEN INSTRUMENTS.— When the language of a promisor may be understood in more senses than one, that construction shall prevail which he knew or had reason to believe the promisee placed on the language used. In discovering the intent the court will look to all the circumstances attending the transaction and the situation of the parties.

4. CASES CITED.— Daughtrey v. Knolle, 44 Tex., 454; Hough v. Hill, 47 Tex., 153; Rogers v. Bracken, 15 Tex., 564, and Orr v. O'Brien, 55 Tex., 155, cited.

5. WILLS — POWER OF EXECUTOR.— When the power conferred by will on an executor is general, to carry out a particular object named, a resort to the ordinary and usual methods to accomplish the object comes within the scope of the power.

APPEAL from McLennan. Tried below before the Hon. B. W. Rimes.

Trespass to try title, brought by Ann R. Dashiell and Alfred H. Dashiell, a minor, represented by his next friend, J. H. Bennett, filed 15th March, 1882, against J. J. Faulk and wife, Genie Faulk, for the recovery of four hundred and sixteen acres of the Jacob Walker league in McLennan county. Defendants filed a general demurrer, general denial and a plea of not guilty. The case was tried 5th June, 1883, before the court without a jury, and a judgment was rendered in favor of plaintiffs for the land, and for costs, etc., from which judgment defendants took an appeal, upon their motion for new trial being overruled, and they filed an appeal bond, and have assigned errors. One of the links in the chain of title of defendants consisted of a deed of trust on the land in controversy, made by W. B. Dashiell, as the executor of the last will of C. A. Dashiell, deceased, who was the ancestor of plaintiff; and the main point in the case involved the power of the executor, under the terms of the will, to bind the land by giving a deed of trust upon it. The construction of the deed of trust was also involved. The land was sold under the deed of trust, and appellants claimed under the purchaser at such sale.

The land in controversy was the separate property of the testatrix, C. A. Dashiell, who constituted her husband, W. B. Dashiell, executor of her will, which directed as follows:

"It is my will and desire, and I hereby direct that my executor take full charge of my entire estate and manage and control the same as he may think best for the interest of my children before named, and I hereby fully empower him, my executor, to sell, exchange and dispose of my estate as he may deem necessary for the interest of my said children, being responsible to no one, and do direct that no bond be required of my executor, and that no further proceedings be had on my estate by the probate court than the pro-

bating of this, my last will and testament, and the return of an inventory and appraisement of my estate. It is my will and desire, and in conformity that I hereby direct, that my executor take charge of my entire estate and manage and control the same for the support, maintenance and liberal education of my children aforesaid, and when my children attain lawful age it is my will and desire, and I hereby direct, that the residue remaining in the hands of my executor, after raising and educating my children aforesaid, be equally divided among my said children."

The land in controversy was part of a tract which, at the time of the death of Mrs. C. A. Dashiell, was owned jointly with L. V. Greer. Partition of it was effected after her death, and on the 15th of January, 1876, L. V. Greer conveyed by deed her interest to "W. B. Dashiell, executor of C. A. Dashiell." On May 18, 1876, said W. B. Dashiell made and delivered a deed of trust on said land, constituting D. W. Doom trustee, to secure the payment of $2,120 received from C. R. Beatty as a loan, and which was evidenced by Dashiell's promissory note payable twelve months after date, bearing twelve per cent. interest per annum.

The deed of trust contained the following recitals:

"Know all men by these presents that I, W. B. Dashiell, as executor of the last will of C. A. Dashiell, deceased, of the county of Kauffman, state of Texas, for and in consideration of $1 to me in hand paid, etc., have given, granted, bargained, sold, alienated and conveyed unto and delivered to D. W. Doom (trustee) all my right, title, interest and claim in and to the following described property, situated in McLennan county, Texas (specially waiving all homestead, dowry, interest or other rights secured under the constitution and laws of Texas and exempt from forced sales thereby), viz.: Four certain lots of land, part of the headright of Jacob Walker, being," etc., describing the property mortgaged.

The deed of trust also provided that in default of payment the trustee could sell, etc., and upon payment of the purchase money by the bidder, "to make, execute and deliver to the purchaser a warranty deed to the property, signing my name thereto, and I bind myself to warrant and defend the same against the lawful claims of all persons," the proceeds of sale to be applied to payment of said note, etc., "and the residue to be paid to me or my legal representatives." The deed of trust is signed "W. B. Dashiell, as executor of C. A. Dashiell, deceased." The acknowledgment of the notary recites: "This day personally appeared W. B. Dashiell, as executor of the estate of C. A. Dashiell, deceased, well known to me,

who acknowledges," etc. A sale was made under this deed of trust, and a deed executed by the trustee to C. R. Beatty, as purchaser, for the land in controversy, dated 15th February, 1879, reciting the several predicates usual in such deeds, and referring to the maker of the deed of trust as " W. B. Dashiell, as executor of C. A. Dashiell, deceased."

The appellants assigned as grounds of error:

1st. The court erred in the construction of the deed of trust from W. B. Dashiell to D. W. Doom, trustee, in that it was held that by the terms of said trust deed it only conveyed all the right, title and interest of said W. B. Dashiell, and did not affect, incumber or convey any of the right, title and interest of the children and devisees of the testatrix, Catherine A. Dashiell, and that by the sale by said trustee thereunder no right, title or interest of said devisees passed.

2d. The court erred in holding that by the terms of the will of Catherine A. Dashiell, W. B. Dashiell was not empowered and authorized, for the purposes mentioned therein, of raising, maintaining and educating her children, to mortgage the property devised.

*Felix Robertson* and *Herring & Kelley*, for appellants, cited: Daughtrey *v.* Knolle, 44 Tex., 453 *et seq.;* Hough *v.* Hill, 47 Tex., 153; Rogers *v.* Bracken, 15 Tex., 567; Giddings *v.* Byers, 12 Tex., 82; Eckhart *v.* Reidel, 16 Tex., 65 *et siq.;* Rogers *v.* Frost, 14 Tex., 268; Williams *v.* Chandler, 25 Tex., 11; Orr *v.* O'Brien, 55 Tex., 156–8; Danish *v.* Disbrow, 51 Tex., 235; Hill on Trustees (star page), 342, 355 and n. 1, 475; 4 Kent (12th ed.), 147–8; Lancaster *v.* Dolan, 1 Rawle (Pa.), 231; Zane *v.* Kennedy, 73 Pa. St., 182; Presbyterian Corporation *v.* Wallace, 3 Rawle, 109; Duval's Appeal, 38 Pa. St., 118; Penn's Life Ins. Co. *v.* Austin, 42 Pa. St., 257; 1 Am. Law Reg. (O. S.), 128; Steifel *v.* Clark, 9 Bax. (Tenn.), 466; 13 U. S. Dig. (N. S.), 1882, p. 738, secs. 10, 11.

*Clark & Dyer*, for appellees, cited: Kershaw *v.* Boykin, 1 Brev. (S. C.), 301; Webb *v.* Webb, 29 Ala., 606; Farquharson *v.* Eichelberger, 15 Md., 63; Norris *v.* Harris, 15 Cal., 226; Bloomer *v.* Waldron, 3 Hill (N. Y.), 361; Ferry *v.* Laible, 31 N. J. Eq. (4 Stew.), 577; Wilson *v.* Ins. Co. (Md., October term, 1882), 17 Cent. L. J., 500; Patapsco Guano Co. *v.* Morrison, 2 Woods, 395; Gregg *v.* Curner, 36 N. H., 200; Dexter *v.* Sullivan, 34 N. H.

WALKER, P. J. COM. APP.— Considering first the first ground of assigned error, we are of the opinion that it does not appear from the deed of trust, viewed in connection with the evidence in the

case, that it was the intention of W. B. Dashiell to limit the conveyance made in it to his own particular interest in or title to the property described in it. It would be altogether too close and technical a construction applied to the words "all my right, title, interest and claim," under the evidence, for a court having equity jurisdiction to confine their meaning to the right, title, interest and claim of the grantor in his personal and individual right.

It appears from the will that he possessed no other title nor interest in the property than such as he held in his fiduciary relation as trustee under the will. His deceased wife having died, leaving a will which in express terms devised and bequeathed to her children all of her property, both real and personal, he did not inherit the life estate in one-third of the lands of the deceased, as otherwise he would have done. He therefore had no interest whatever in the land, and the instrument must be construed as being meant to convey the title and interest of some one; and the construction, where the terms used are doubtful or ambiguous, will be given to it which is most strongly against the grantor.

Where doubt exists as to the construction of an instrument prepared by one party, upon the faith of which the other party has incurred obligations or parted with his property, that construction should be adopted which will be favorable to the latter party; and where an instrument is susceptible of two constructions — the one working injustice and the other consistent with the right of the case — that one should be favored which upholds the right. 1 Wait's Act. & Def., 124. Citing Noonan v. Bradley, 9 Wall. (U. S.), 395, 407; Barney v. Newcomb, 9 Cush. (Mass.), 46.

And where the language of a promisor may be understood in more senses than one, it is to be interpreted in the sense in which he knew or had reason to suppose it was understood by the promisee. 1 Wait's Act. & Def., 124. Citing Hoffman v. Ætna Ins. Co., 32 N. Y. (5 Tiff.), 405, 413; Barlow v. Scott, 24 N. Y. (10 Smith), 40.

And when it becomes necessary to inquire into the intent of the parties to a deed, the court will take into consideration the circumstances attending the transaction and the particular situation of the parties, the state of the thing granted, etc., at the time. 2 Wait's Act. & Def., 504, and authorities there cited.

It is obvious that from the application of these rules of construction it must result that the deed of trust was intended to operate upon the right and title of the estate of Mrs. Dashiell in the land; that the mortgagee must thus have understood it when he loaned the money, and that W. B. Dashiell must have supposed that it was

so understood by Beatty at the time. The attendant facts and cir-
cumstances negative the idea that the terms "as executor of C.
A. Dashiell, deceased," added to the grantor's signature, were used
as words merely descriptive of the person. In addition to these
considerations, W. B. Dashiell, in the body of the instrument, pur-
ports to act in the premises "as executor," etc. He being vested
under the will with the legal title in trust with power to convey, it
will be intended by the court in construing the instrument in ques-
tion, under the attendant facts, that, without regard being paid to
the form of expression heretofore referred to, the whole interest
in the land that was thus vested in W. B. Dashiell was conveyed
by it.

The case of Daughtrey v. Knolle, 44 Tex., 454, is quite analogous
on the point under consideration to this case, and the principle there
applied seems broad enough to be decisive of the question in this.
See, also, Hough v. Hill, 47 Tex., 153, citing Robins v. Bellas, 4 Watts
(Pa.), 256; also, see Rogers v. Bracken, 15 Tex., 564. The principle
involved and the rule to be followed are clearly expounded in 2 Perry
on Trusts (3d ed.), sec. 511 (c), which see; also, Norris v. Harris, 15
Cal., 226. The construction of the powers granted under the will,
contended for under the second assigned error, is, we think, correct.

Wills are to be construed with liberality, so as to arrive at the in-
tention of the testator; regarding forms of expression contained in
them, or technical terms and words, far less than in deeds, or other
formal instruments intended to operate *inter vivos.*

Many of the features of this will are identical with those con-
tained in the will which was construed in the case of Orr v. O'Brien,
55 Tex., 155, which see. The will in that case constituted the exec-
utrix such without bond and independent of the probate court; it
gave to her all of the testator's personal and real estate "for and
during her natural life, to be applied as she may deem best to the
maintenance of herself" and their children. It provided that in the
event of her death, "such of the property as may be left" should
be divided equally among the children; and declared it to be the
purpose of the testator to make his wife "the unrestrained control-
ler" of his property. Under these powers, without specific designa-
tion of authority to sell, it was held, in that case, that an absolute
conveyance of real estate by the executrix vested the title.

Powers equally explicit, comprehensive and altogether of an
analogous character, on the subjects embraced in the other will, are
contained in this, as will be readily noticed by a comparison of the
two. It seems to have been the intention of Mrs. Dashiell to un-

fetter, as far as she might be able to do by the use of apt and comprehensive expressions of her wishes, the discretion of her husband in respect to the management, control and disposition of her property so as to subserve what he might regard as being the interest of their children. The will directs that he shall, for the object which seemed most to interest her,— the future welfare of her children — "manage and control" her entire estate "as he may think best" for the children's interest. This desire is again expressed in another part of the will, directing that he shall take charge of said estate and manage and control it for the support, maintenance and liberal education of her said children, followed by directions for the disposition of the residue remaining in the hands of the executor after raising and educating the children.

The authority thus conferred by the will confides to the judgment of the executor the mode by which he shall give effect to the main purposes of the trust. The will contemplates the necessity of raising money wherewith to support, maintain, and furnish a liberal education to the children, and it anticipates the possibility that in doing these things that a portion and perhaps all the property may be consumed. The management and the control of the property to effect these objects is unrestricted and unlimited otherwise than as the executor "may think best." The exercise of such a discretion as this evidently includes the choice of selling, leasing or of mortgaging the property if necessary, in his opinion, to raise money for the objects of the trust. See Orr v. O'Brien, *supra;* Danish v. Disbrow, 51 Tex., 235.

Where the power is general to perform and carry out a particular object, a resort to the ordinary and usual methods or means comes within the scope of the power. See Layet · v. Gano, 17 Ohio, 473; 10 Ohio St., 396; and see 1 Wait's Act. & Def., 221; Bridenbaker v. Lowell, 32 Barb., 9, 17; Minor v. Mechanics' Bank of Alexandria, 1 Pet., 46. And in respect to an assignment or conveyance in trust, which contemplates a necessity for the raising of money, as to pay debts or the like, it seems that in the absence of express directions given in such, if the whole scope of the deed show that the parties must have intended a sale, a sale will be properly made; for, in expounding trusts, though created by deed, the intention of the parties is to be pursued as much as in wills. See Hill on Trustees, star p. 342. The same principle is equally applicable, it seems, to raising money by mortgage. Id.

The general power which the will conferred, to manage and control the property as the executor might think best for the interest

of the children, embraced, we think, the power to mortgage or to sell in order to carry out the purposes of the trust; and the only remaining question is whether the will contains any provisions in it which have the effect to qualify or limit this general authority.

It is urged by appellees' counsel that the general authority conferred was restricted by the terms used in the will which empowered the executor "to sell, exchange and dispose of" the estate as he may deem necessary for the interest of the children. We think that these words, instead of being used in a restrictive sense, were intended to render more clear and absolute the authority and power meant to be conferred in the preceding and subsequent parts of the will which gave the executor full control and management of the estate for the purposes named. The power "to sell, exchange and dispose of" is consistent with the existence of the general powers conferred, and if the character and scope of the latter are varied by the specific designations thus indicated, the effect is to enlarge and extend the executor's authority of disposition of the property, rather than to contract, limit or diminish it.

The sentence in the will which invests the executor with his powers, directs that he shall manage and control the estate as he may think best, and in terms not less general and comprehensive, and indicative of the testatrix's wish that her husband should be wholly unrestricted as to the modes whereby he should act in carrying out the purposes of supporting, maintaining and liberally educating her children, proceeds to instance the most absolute power that could be held by him as to the property, viz.: by selling it if he saw proper. She next provides for exchanging it if he saw proper; and last, in order to embrace any other supposable method of using the property to the children's advantage, she employs the general expression that he may "dispose of the estate in such way as he, in his discretion, may judge to be necessary for the interest of said children," and adds that his discretion shall not be hampered by responsibility to any one by reason of his free exercise of it in respect to the powers given to him. Reading the sentence as an entirety, and not in isolated, detached parcels, it is obvious, we think, that it manifests as a whole a single intention to invest her husband with the most ample power to use, control and in any wise to dispose of the property, and that there is no portion of it which warrants the interpretation of an intention to restrict or limit the executor's authority. Language more expressive of her confidence in the ability of her husband to manage the estate, and of her desire to invest him with power to dispose of the property in any way whatever that he deemed best

calculated to promote the interest of their children, independent of all direction or dictation of any tribunal, and of responsibility to any person whomsoever, could hardly be used.

We are of the opinion, therefore, that there was ample authority conferred by the will on the executor to mortgage the land; and under a power for purposes so general and undefined as to particulars, the mortgagee would not be bound to ascertain the necessity for the loan to the executor, nor to see to the application of the money. See Hill on Trustees (2d Amer. ed.), p. 480; Danish v. Disbrow, 51 Tex., 241; 1 Wait's Act. & Def., p. 328, sec. 3, and authorities there cited; Sanger Bros. v. Heirs of Moody, 60 Tex., 96.

If, however, we are to regard the power conferred on the executor "to sell, exchange or dispose of as he may deem necessary for the interest of my children," as a limitation upon the authority otherwise given in the will, it seems that the result must still be the same. Under a power to sell lands for the payment of debts, a mortgage, it seems, may be given to raise money for that purpose, unless it be the clear intention of the testator, in directing the sale, that his real estate should be absolutely converted. And although there may be no specific direction for the sale of the estate, but only a trust to raise or to pay debts; or a devise subject to or charged with debts; or the debts and legacies being first deducted,—in all these cases the trustees may properly raise the required amount by sale or mortgage, without waiting for a decree. Hill on Trustees (2d Amer. ed.), pp. 499, 500 (star p. 355). It is laid down in many cases that a power of sale implies a power to mortgage. See Gordon v. Preston, 1 Watts, 385; Lancaster v. Dolan, 1 Rawle, 231; Williams v. Woodard, 2 Wend., 492; Duval's Appeal, 38 Pa. St., 118; Steifel et al. v. Clark, 9 Bax. (Tenn.), 470. See, also, 4 Kent's Com., 148; 3 Rawle, 109; 2 Wright (Pa.), 118; Zane v. Kennedy, 73 Pa. St., 182. And see numerous other cases collected and synopsized in a note in Ferry v. Laible, 31 N. J. Eq. (4 Stew.), 567 et seq.

In some other cases this doctrine has been denied, and in its application subjected to considerable modification. See Hill on Trustees (2d Am. ed.), note 1, p. 499; and see Bloomer v. Waldron, 3 Hill (N. Y.), 361; Ferry v. Laible, 31 N. J. Eq. (4 Stew.), 577; Page v. Cooper, 16 Beav., 396; Wood v. Goodridge, 6 Cush., 117; Albany Fire Ins. Co. v. Bay, 4 N. Y., 9; Coutant v. Servoss, 3 Barb., 128; Tyson v. Latrobe, 42 Md., 325; Hubbard v. German Catholic Cong., 34 Iowa, 31. Without attempting to indicate which of these lines of decision should be accepted as furnishing the proper rule to fol-

low, it is sufficient to say that, under this state of the law upon the point, the testatrix might well have supposed that in conferring the power "to sell" the authority was conferred thereby to mortgage the property.

But she extends still further the specifications of authority given to her husband. If it was her intention to limit it to that of selling, and to exclude the power to mortgage or to incumber, it would have been but superfluous redundancy to have added the authority "to dispose of my estate as he may deem necessary for the interest of my said children." Effect should be given to every part of the instrument if. it may be done consistently with the intention of the testatrix and with its other parts. In Gordon v. Preston, 1 Watts (Pa.), 386, on the question whether a certain incorporated company had under its charter power to mortgage, Gibson, C. J., said: "By the second section of the act of incorporation the company was authorized to purchase in fee or for any less estate 'all such lands, tenements or hereditaments, and estate real and personal, as shall be necessary and convenient for them in the prosecution of their works; and the same to sell and *dispose of* at their pleasure.' According to the principle of Lancaster v. Dolan, 1 Rawle, 131, a power to sell includes a power to mortgage, even under the statute of uses, though strictly construed; and *a fortiori* it ought under a statutory grant which is to be beneficially construed in furtherance of the object. But the superadded words " dispose of," which would otherwise be redundant, leave no doubt of the existence of an intent to give the corporation power to part with its real estate by any voluntary act, without regard to the mode of its operation; and as a power to incumber might be necessary to the prosecution of its works, it is not to be doubted that it was intended to be given."

Nor is there less doubt, for the same reasons, that Mrs. Dashiell intended to confer, by the use of the same term, the powers which were accorded by the opinion of Chief Justice Gibson to the incorporated company. Whilst it may be true that those words might not in every supposable connection and relation, when employed in written instruments, import such extended authority, and might according to the subject-matter upon which they are to operate, and under all the circumstances existing for their interpretation, be limited to narrower bounds in their interpretation, yet, in the connection and relation in which they are here presented — " in furtherance of the objects " for the accomplishment of which the testatrix, as manifested by the whole will, was endeavoring to provide,—we think it clear that the power conferred by the use of those words place it

beyond dispute that the executor was fully authorized to mortgage the land.

We must look to all parts of a will to ascertain the intention of the testator. Vardeman v. Lawson, 17 Tex., 18. Under this rule of construction discrepancies and seemingly contradictory or repugnant clauses of it will be reconciled, and thereby effect given to what were the true intentions and wishes of the testator. See Wells v. Slater, Tex. L. Rev., 121 (unreported case).

For the errors indicated, we conclude that the judgment ought to be reversed and rendered by the supreme court in favor of the defendants. The cause having been submitted to the court without a jury; the facts not being controverted which involve the merits of the suit, and presenting only a question of law as to the rights of the respective parties to the suit; and there being apparent no reason why the trial below should not finally determine this suit, we are of the opinion that the supreme court ought to render on this appeal such judgment as ought to have been rendered on the evidence adduced at the trial, which, as above indicated, ought to be for the defendants.

REVERSED AND RENDERED.