# Gindrat *v.* Montgomery Gas-Light Co.

### *Statutory Action in nature of Ejectment.*

1. *Construction of deed as to power to sell with "assent in writing of said cestui que trust."*—Where lands are conveyed to a trustee (1) for the sole and separate use and benefit of his mother during life, (2) then for his brother and two sisters during life, and (3) on their death the property to vest in their children then living; and power is given to him to sell, with the advice and consent of his father, "on cash or for credit, as they may think proper;" with a further provision, that if the father should die, "leaving any portion of said trust property undisposed of in the hands of said trustee, then it shall be necessary for said trustee, before disposing of said property, to obtain the assent in writing of said *cestui que trust;*" the assent of the mother only is required, after the death of the father, and the assent of the brother and sisters, or their children, is not necessary.

2. *Execution of power of sale by trustee.*—When a trustee, having a power to s ll lands with the assent in writing of the first *cestui que trust* for life, but no interest whatever in the property, joins with her and her children (subsequent *cestuis que trust* for life) in a conveyance of the property on valuable consideration, with covenants of warranty; this is a good execution of the power, although the conveyance does not mention or refer to it.

3. *Assent in writing to execution of power of sale.*—When the assent in writing of the *cestui que trust*, to the execution of a power of sale conferred on a trustee, is r quired (Code, § 2215), it is sufficiently manifested by joining with the trustee in the execution of a conveyance to the purchaser.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN P. HUBBARD.

[Gindrat v. Montgomery Gas-Light Co.]

This action was brought by John H. Gindrat and others, children and heirs at law of Abram Gindrat, deceased, against the Montgomery Gas-Light Company, a domestic corporation, to recover an undivided one-half interest in certain lots in the city of Montgomery, on which the defendant's gas-works were erected; and was commenced on the 21st August, 1885. The defendant pleaded not guilty, and the statutes of limitation of ten and twenty years; and the cause was tried on issue joined on these pleas. The lots sued for had belonged to John Gindrat, senior, who was the grandfather of the plaintiffs, and were conveyed by him by mortgage dated July 17th, 1837, to Ware & Billingslea. On the 23d June, 1845, Ware & Billingslea conveyed the lots, by quit-claim deed, to John Nickels, on the recited consideration of $130; reciting in the deed that the lots had been sold under the mortgage on the 3d February, 1810, and that said Nickels had become the purchaser at the price of $130. On the 17th July, 1845, Nickels conveyed the property by quit-claim deed, on the recited consideration of $130, to John H. Gindrat as trustee, "in special trust and confidence, for the sole and separate use, benefit and behoof of Sarah L. Gindrat during the term of her natural life; and at her death said premises shall still be held in trust for her three children, to-wit: Abram Gindrat, Mary Elizabeth Winter, and William B. Gindrat, for and during the term of their natural lives; and at their death the same shall vest in the heirs at law or children of them, the said Abram, Mary Elizabeth and William B., that may be living at the time of their deaths. *Provided* always, and it is expressly provided and agreed, by and between the parties, that the said trustee may at any time, with the advice and consent of John Gindrat, the father of the said Abram, Mary Elizabeth and William B., sell and dispose of any or all of said lots, for cash or upon credit, as they may think proper; and it is further agreed and stipulated, by and between the parties, that should said John Gindrat die, leaving any portion of said trust property undisposed of in the hands of said trustee, then it shall be necessary for said trustee, before disposing of any portion of said trust property, to obtain the assent in writing of the said *cestui que trust*, to that effect." Mrs. Sarah L. Gindrat, mentioned in said deed, was the wife of said John Gindrat; and John H. Gindrat, the trustee, was his son. The plaintiffs claimed as remainder-men under this deed, and they proved that said John Gindrat, senior, died on the 29th March, 1851; Mrs. Sarah L. Gindrat, on the 9th June, 1854; William B. Gindrat, some time during the year 1852,

[Gindrat v. Montgomery Gas-Light Co.]

leaving no children ; John H. Gindrat, on the 16th October, 1874; and Abram Gindrat, their father, in October, 1884.

The defendant claimed the property under a deed of conveyance dated December 10th, 1853, which was executed by said John H. Gindrat and wife, Mrs. Sarah L. Gindrat, Abram Gindrat and wife, and Joseph S. Winter and his wife, Mrs. Mary Elizabeth Winter, as grantors. This deed recited the payment of $3,000 cash as its consideration, which, however, was paid in the company's stock; and it contained convenants in these words : "And we do convenant and agree with the said company, its successors or assigns, that we are seized of an indefeasible estate in the above conveyed premises ; that we have a good right to sell and convey the same ; that they are clear of all incumbrances, and that we will warrant and defend the same to the said company, its successors or assigns, forever, against the lawful claims and demands of all persons whatever."

The above facts being undisputed, and constituting all the evidence, the court charged the jury, on request, that they must find for the defendant, if they believed the evidence. The plaintiffs excepted to this charge, and they here assign it as error.

WATTS & SON, for the appellants.—(1.) Under the deed to John H. Gindrat as trustee, the plaintiffs took a vested interest as purchasers.—*Twelves v. Nevill*, 39 Ala. 175 ; *Roberts v. Ogbourne*, 37 Ala. 174 ; *Thomas v. Denton*, 15 Ala. 583 ; *Farley v. Gilmer*, 12 Ala. 141 ; *Jemison v. Smith*, 37 Ala. 185 ; *Isbell v. Maclin*, 24 Ala. 315 ; *Dunn v. Davis*, 12 Ala. 135 ; *Powell v. Glenn*, 21 Ala. 458 ; *Woodey v. Findlay*, 9 Ala. 716 ; *McGraw v. Davenport*, 6 Porter, 309 ; 1 Jarm. Wills, 751, mar., 727. (2.) The trustee was authorized to sell, during the life of John Gindrat, the father, with his advice and consent; and after his death, "with the assent in writing of the said *cestui que trust.*" These words are as applicable to Abram Gindrat, William B., and Mary Elizabeth, as to their mother, Mrs. Sarah L. ; each being a *cestui que trust* for life only, and the interest of the former being postponed until the termination of the prior life-estate. The assent of the three children being required, and one of them (Wm. B.) having died before the deed was executed, no valid conveyance could be executed with the assent of the survivors only.—*Barber v. Carey*, 1 Kernan, 401 ; 1 Sugden on Vendors, 370, notes ; *Bartlett v. Southerland*, 24 Miss. 393 ; 4 Kent's Com. 363-69, notes ; 2 Dyer, 189, 219. By express statutory provision (Code, § 2219), a power vested in several persons may be

executed by the survivors ; but the statute does not apply to a case where the assent of several persons to the execution of a power is required, nor has the General Assembly ever attempted thus to set aside the express terms of conveyances. (3.) The deed was not executed "with the written assent of " the beneficiaries who joined as grantors in its execution. It shows an attempt by them to convey, but not their assent to a sale by the trustee. If they had been empowered to convey, their signatures might show an attempt to execute the power, other requisites concurring ; but their assent to a sale by an other person could only be manifested by being " expressed in the instrument " (which must also be signed by them) " or certified in writing thereon."— Code, § 2215. (4.) But the deed was not an execution of the power by any of the parties. On the contrary, there is no reference to the power, and the deed shows on its face that the parties acted in ignorance or forgetfulness of the conveyance creating the trust—acted as if the property belonged to them as widow and heirs of John Gindrat. If the deed was intended as an execution of the power, why was it not referred to ? Why should the wife of the trustee join with him in its execution, or J. S. Winter join with his wife ? And why should the stock, received as the consideration, be divided between the trustee and the other children, as the evidence shows it was ? The deed on its face, and all the attendant circumstances, repel the idea that it was an attempt to execute the power.—*Foster v. Goree*, 5 Ala. 424 ; *Chambers v. Mauldin*, 4 Ala. 447 ; *M. E. Church v. Price*, 42 Ala. 39 ; Sugden on Vendors, vol. 1, p. 471 ; 2 Story's Equity, § 1062 ; *Blagge v. Miles*, 1 Story, 426 ; 2 Bing. 497.

SAYRE & GRAVES, WILLIAMSON & HOLTZCLAW, and MACDONALD, MARKS & MASSIE, *contra*.—(1.) The action was prematurely brought during the life of Mrs. Mary E. Winter. (2.) The assent of the widow only was required to the execution of the power of sale by the trustee, and that was sufficiently manifested by her joining with him in the execution of the conveyance to the purchaser ; and the assent of the children, if necessary, was sufficiently manifested in the same way.—2 Perry on Trusts, § 784 ; 4 Kent's Com. 326 ; Code, § 2219 ; *Tarver v. Haines*, 55 Ala. 503 ; 7 H. L. Cases, 245 ; 2 Blatch. 62 ; *Osgood v. Franklin*, 2 John. Ch. 20. (3.) The power of sale was well executed by the conveyance, which would be inoperative unless referred to the power.—1 Sugden on Vendors, 356, 386 ; 2 Washb. Real Property, 320, § 14 ; 4 Kent's Com. 335 ; 1 Story on

600 SUPREME COURT [Dec. Term,

[Gindrat v. Montgomery Gas-Light Co.]

Equity, § 174; 2 *Ib.* § 1062; 2 Perry on Trusts, § 511; *McRae v. McDonald,* 57 Ala. 428; *Matthews v. McDade,* 72 Ala. 379; *Gosson v. Ladd,* 77 Ala. 223; 49 Mo. 24; *Campbell v. Johnson,* 65 Mo. 439; *Morey v. Michael,* 10 Mo. 241; 39 Ohio, 551. (4.) After the lapse of thirty years, as here, all presumptions will be indulged in favor of the due execution of the power.—*Gosson v. Ladd,* 77 Ala. 223; *South v. South,* 91 Ind. 221.

SOMERVILLE, J.—The first question we consider, as the one of controlling importance, is, whether there has been a valid and sufficient execution of the power of sale conferred on John H. Gindrat, as trustee under the deed of trust executed by John Nickels on July 17th, 1845. If so, this would cut off the interest of the plaintiffs, as remainder-men under the provisions of that instrument, and be fatal to their right of recovery in this action.

This deed is made in trust upon a recited valuable consideration, moving from the trustee to the grantor, (1) "for the sole and separate use, benefit and behoof of Sarah L. Gindrat," the wife of one John Gindrat, and the mother of the trustee, during the term of her natural life; (2) at her death, in trust for her three children, Abram Gindrat, Mary Elizabeth Winter, and William B. Gindrat, for and during the term of their natural lives; (3) at their death, the premises conveyed to "vest in the heirs at law and children of them, the said Abram, Mary Elizabeth, and William B., that may be living at the time of their deaths."

The clause of the instrument, which vests in the trustee the power to sell, is not absolute, but conditional, being in the following words; "*Provided* always, and it is expressly provided and agreed by and between the parties, that the said trustee may at any time, with the advice and consent of John Gindrat, the father of said Abram, Mary Elizabeth and William B., *sell and dispose of any* or all of said lots, for cash, or upon credit, as they may think proper; and it is further agreed and stipulated by and between the parties, that, should John Gindrat die, leaving any portion of said trust property undisposed of in the hands of said trustee, then it shall be necessary for said trustee, before disposing of said property, *to obtain the assent in writing of said cestui que trust.*"

What is meant by the phrase "*said cestui que trust,*" and to whom is it intended to have reference? Does it refer to Mrs. Sarah L. Gindrat, the first beneficiary under the deed, who was primarily entitled for life to the usufruct of the property, with its rents and profits? or does it refer to the

[Gindrat v. Montgomery Gas-Light Co.]

second life-tenants and the remainder-men, all of whom may be ultimately beneficiaries, or *cestuis que trust?* This is a pivotal point of contention, and depends upon the intention of the grantor in the deed, as may be inferred from a sound and proper construction of its language. A *cestui que trust* is one who has a right to a beneficial interest in and out of an estate, the legal title to which is vested in another as trustee. He is an equitable owner, and, if his right of possession is not postponed, he is entitled to the usufruct, or rents and profits of the trust estate. The word, as used in the deed, is in the singular, not in the plural. It would be more natural, therefore, to construe it as having reference to one, than to many. If it be made to embrace the second class of life-tenants, and the then unknown remainder-men, who were contingently beneficiaries, we must convict the grantor in the deed of a clerical misprision, in its preparation, of the gravest character, and one resulting in the most serious consequences in controlling its interpretation.

Can we suppose that the grantor intended to confer on the trustee, John H. Gindrat, the power to sell, after the death of his father, John Gindrat, who died in March, 1851, only on condition that he obtained the assent in writing of the three children of John and Sarah L. Gindrat (Abram, Mary Elizabeth and William B.), and such of their children as "might be living at the time of their deaths," who would be the remainder-men in the deed, and, therefore, in a generic sense, also *cestuis que trust* equally with the second class of life-tenants? If we are to enlarge the singular of this word into the plural, by judicial construction, it will obviously include the remainder-men as well as the second life-tenants, for both classes are beneficiaries—or *cestuis que trust*, within the more comprehensive signification of the phrase. No sound reason can be adduced which would include the one, not equally applicable to the other. This construction would lead to results embarrassing in their nature, if not absurd and impracticable. It can scarcely be supposed that it was intended by the grantor in the deed that the power to sell should depend upon the assent of all these beneficiaries, some of whom might not be in existence, or might be minors of tender years, at the time when it was deemed expedient to sell; and the death of any one of whom, according to the well-settled rule of the common law, would defeat the execution of the power by the survivors. It must be supposed that the grantor was not ignorant of this rule—that he knew that, where the consent of more than one *cestui que trust* was required, as a condition to the

execution of a ʃpower conferred on a trustee, the death of
any one of them, without giving such consent, would destroy
the power by rendering its execution impossible; a rule
which has been modified by our statute only so far as ap-
plicable to the grantees of a power, not to persons by whose
consent it is to be executed.—*Barber v. Cary*, 1 Kern. (N. Y.)
397 ; Code, 1876, §§ 2219, 2215.   We repeat, it is not prob-
able, therefore, that he could have intended to tie up the
trust estate in this manner, by the requirement of a condi-
tion which the most ordinary sagacity could not fail to see
would be unbusiness-like, impracticable, and unreasonable.
It is observable, that, during the life of John Gindrat, his
consent alone was necessary to the execution of this power,
the policy being thus adopted which favors the certainty
and promptitude of unity in the execution of the power.
To depart so suddenly from this intention, would not seem
to harmonize with the purpose of the grantor; which was,
to provide a reasonable mode for selling or disposing of the
property.   How could this better be done, than by select-
ing the mother of the second life-tenants, and the grand-
mother of the remainder-men—the primary object of the
grantor's bounty, if we so consider it, who was to be put at
once into the possession and enjoyment of the use of the
property ?   Such we take to be his meaning, and we accord-
ingly hold that his intention was to refer to Mrs. Sarah L.
Gindrat, when he used the phrase "the said *cestui que
trust*"—the singular number being used with significant in-
tention.   Our conclusion is, that, after the death of John
Gindrat, the consent of Mrs. Sarah L. Ginrat alone, prop-
erly expressed, was necessary to the execution of the power
of sale vested in the trustee under the deed of trust in
controversy.

2. We next proceed to inquire whether the deed made by
Sarah L. Gindrat, John H. Gindrat, and others, on Decem-
ber 10th, 1853, operated as a valid and sufficient execution
of the power.   There being in this deed no direct reference
to the power, the question, which is one of intention, may
be solved by implications, dependent on the words, acts or
deeds of the party demonstrating such intention—by which
is meant all relevant facts and circumstances illustrating or
throwing light upon the matter.   It must be made reason-
ably clear and manifest that the conveyance in question was
intended as an execution of the power, and not otherwise.
*Matthews v. McDade*, 72 Ala. 377.   As said by Judge STORY,
in *Crane v. Morris*, 6 Peters, 598, "it is sufficient if the
power exists, and is intended to be executed ; and that in-
tent is matter *in pais*, to be collected from all the circum-

stances of the case." "The power," says Chancellor KENT, "may be executed without reciting it, or referring to it, provided that the act shows that the donee had in view the subject of the power."—4 Kent. Com. 334.

The early English cases on this subject established a rule which so frequently operated to defeat the intention of grantors and testators, as to require a decided departure from it, accompanied with frequent criticisms of its unsoundness by the most learned judges. In one case, Lord ELDON was induced to declare, that he was "not sure the rule did not oblige the court to act against what might have been the intention nine times out of ten."—*Nannock v. Horton*, 7 Ves. Jr., 398. In another case, an eminent Vice-Chancellor said : " I must, although almost ashamed to say it, decide against what I firmly and sincerely believe to have been the intention of the testatrix, that the power of appointment has not been exercised. I am bound, however, by the authorities. I can not help myself, and I must so decide."—*Davis v. Thorne*, 2 De Gex & Sm. 347. So, in another case, Sir William Grant was forced, as a judge, to reach a conclusion which his judgment as a jurist repudiated.—*Jones v. Tucker*, 2 Mer. 533.

The strictness of this rule, characterized by Sir Edward Sugden as one "distinguishing *power* from *property*,"—that is, the power to dispose of property from the technical right of property—has been repudiated by the modern cases, and there is now everywhere manifested by the courts a growing disposition to adopt a principle more liberal to the execution of such powers, and more just and certain in the ascertainment of the supposed intention relating to their execution. In *Blagge v. Miles*, 1 Story, 4:6, Judge STORY reviews the English cases, and, adopting the rule recently referred to by this court in *G)sson v. Ladd*, 77 Ala. 224, 234, said : "Three classes of cases have been held to be sufficient demonstrations of an intended execution of a power: (1) where there has been some reference in the will or other instrument to the power; (2) or a reference *to the property*, which is the subject on which it is to be executed; (3) or where the provision in the will, or other instrument, executed by the donee of the power, would otherwise be ineffectual, or a mere nullity ; in other words, it would have no operation except as an execution of the power." Judge STORY thought there might be other cases embraced in the rule beside these three classes, and his view is sustained by the latter cases.—*Funk v. Eggleston*, 92 Ill. 514.

There are several facts which, under this rule, seem to us

to clearly demonstrate an intention on the part of John H. Gindrat, the donee of the power, to execute it.

(1.) He owned no title or interest in the property conveyed, which fact we must presume he knew; and the instrument nevertheless has reference to the specific property which was the subject of the power. The case is thus made to fall within the second class of cases described in *Blagge v. Miles, supra.* We understand this class to embrace cases where the donee of a power, having no interest in certain property, or else an interest less than the whole, but having a power to appoint or convey the whole, undertakes to make such appointment or conveyance in fee simple, in compliance with his authority, but without reference to the power; for this is a *reference to the property*, as distinguished from his fractional or qualified interest in it, and the intention to execute the power will be implied. To use the language of Lord Hardwicke, in *Caswell's Case*, 1 Atk. 490, "he must do such an act as shows he takes *notice of the thing* he had power to dispose of." And in *Probert v. Morgan*, 1 Atk. 440, Lord Hardwicke held, that where a man had "power to *charge* an estate," if he sufficiently described the estate, it would be bound, "especially where the person charging is the purchaser of the power." It is said in Tiedeman on Real Property, § 569, that "The courts have, of late years, so far relaxed the rule as to construe the instrument to be, by necessary intendment, a good execution of the power, if it can not operate in any other way, notwithstanding the deed or will purports to dispose only of the individual property of the donee." And further, "Where the power is not coupled with an interest, if the donee has no property which he could dispose of by means of the instrument executed, it will be a good execution of the power, though neither the power nor the property was referred to." Mr. Washburn, in discussing this subject, says: "An inference as to the intention may be drawn from the character of the property of the donee of the power. If his property not subject to the power is so small, or of such a nature that the descriptions of the property in the deed or will are meaningless unless construed as applying to the property subject to the power, the deed or will will be construed as an execution of the power. Thus, if one have a *life-estate* in land, and a *power of appointment in fee*, and conveys the fee, it is an execution of the power."—2 Wash. Real Prop. (5th ed.), 713. In *Bishop v. Remple*, 11 Ohio St. 277, it is said: "We think no instance can be found, where the property which is the subject of the power is distinctly described and referred to, and the disposition made of the

property would fail, unless considered as made under the power, and there is no other objection to the mode of the disposition except the want of express reference to the power, that the execution of the power has been held to be invalid."—*Baird v. Bourher*, 60 Miss. 329; *Yates v. Clark*, 56 Miss. 216; *Campbell v. Johnson*, 65 Mo. 439; *Funk v. Eggleston*, 92 Ill. 515, and cases there cited; *Munsen v. Berdan*, 35 N. J. Eq. 376; *Amory v. Meredith*, 7 Allen, 397; *Foos v. Scarf*, 55 Md. 301.

(2.) The deed in question purports, not to convey the mere life-estate of Mrs. Sarah L. Gindrat, and the other two beneficiaries who sign it, but it is a conveyance in fee for a valuable consideration, containing covenants of seizin and warranty; thus showing that the donee of the power and the other grantors intended to convey nothing less than a good and perfect title. In *Hall v. Preble*, 68 Me. 100, it was held, that a deed of general warranty, purporting to convey a fee, and made upon full consideration, would operate as an execution of the power, the court observing: "It is not necessary that there should be an express declaration in the deed that it is made in the execution of the power. It is sufficient if the deed purports to convey a fee. When a person conveys land for a valuable consideration, he must be held as engaging with the grantee to make the deed as effectual as he has the power to make it." The same rule is announced and followed in the following cases: *Campbell v. Johnson*, 65 Mo. 439; *South v. South*, 91 Ind. 221; *Orr v. O'Brien*, 55 Tex. 149; *Yates v. Clark*, 56 Miss. 212. As said by Sir William Grant, in *Bennett v. Aburrow*, 8 Ves. 609, the intention "may be collected from other circumstances, as that the will includes something the party had not otherwise than under the power of appointment; that a part of the will would be wholly inoperative, unless applied to the power." The purpose for which the realty in question was sold and purchased corroborates the intention of the deed to convey an indefeasible title. It was bought by a corporation, for the purpose of constructing on it a system of gas-works to be used in lighting a town, or future city, which itself implies the idea of a holding in perpetuity. If the execution of the deed, therefore, be not referable to the power, the manifest intention of the grantors, including that of the donee of the power, is defeated; but, if construed to be so referable, every term of the instrument is satisfied.

(3.) The deed, moreover, is for a valuable consideration, and this is a fact of significance in its interpretation. Lord Redesdale says, "When a person acts for a valuable consid-

eration, he is understood in equity to engage with the person with whom he is dealing to make the instrument as effectual as he has power to make it;" and such is now the established doctrine of the courts.—*South v. South,* 91 Ind. 221.

The above principles make it clear to our minds, that the deed in question was not intended to convey the mere life-estates of the beneficiaries, but was intended as an execution of the power of sale vested in the donee of such power, John H. Gindrat. The signatures of the others, purporting to be grantors, except that of Mrs. Sarah L. Gindrat, were probably attached from a super-abundant caution, as is often done in such cases. It is not unfrequent for persons who have contingent interests in land to sign instruments of this nature, as a further assurance of title, especially where warranties are required.

We hold, that the power was sufficiently executed by the deed, if the consent of Mrs. Sarah L. Gindrat can be held to have been expressed in the manner required by law, she being, as we have seen, the only *cestui que trust* whose consent was at the time required to the execution of the power. This question depends on the construction of section 2215 of the Code of 1876, which was in force at the date of the deed, and which reads as follows: "§ 2215. Where the consent of a third person to the execution of a power is requisite, such consent must be expressed in the instrument by which the power is executed, or must be certified in writing thereon; in the first case, the instrument, and in the second, the writing, must be signed by the party whose consent is required."

3. Was the signing of the deed by Mrs. Sarah Gindrat a substantial compliance with this requirement? We are of the opinion that it was. We have held that the deed itself showed a clear intention to execute the power vested in the donee—there being an express reference in the deed to the subject of the power, and its terms not being satisfied unless we infer the existence of such intention. This being true, an expression of consent to the deed itself, by signing it, was the best possible form of consent to the execution of the power, other than by direct reference to it. The statute does not, in our opinion, mean that the consent shall be ineffectual unless it expressly refers to the power. The deed may execute the power without such reference; and if the minds of the donee, and of the third person whose consent is required, concur in the intention, and the deed expresses it, the statute, we think, is satisfied. The law looks at the substance of things, rather than at forms

or shadows. It is said, in full accord with this view, by Mr. Perry: "Where the required consent must be in writing, any writing signed by the party, implying his consent, will be sufficient, whether it is a deed, or mortgage, or other paper, by which his consent is given or implied." 2 Perry on Trusts, § 784.

We might add other reasons corroborative of the conclusion reached by us, that the power of sale vested in the donee, John H. Gindrat, was properly and legally executed, but we deem it unnecessary. The sale made by him, under the deed of December 10, 1853, operated to cut off the interest of the plaintiffs, conceding that their interest was a vested one, as to which there is much doubt.

Affirmed.