## HORACE McDANIEL v. JOHN F. NEEDHAM.

(Case No. 1689.)

1. AUTHENTICATION.— A certificate made in 1851 by a county clerk, over his seal of office, reciting that one whose name appeared signed to a power of attorney to which the certificate was attached, appeared before that officer, and in his presence signed, sealed and delivered the same for the uses and purposes therein contained, afforded no such proof, under the statutes in force at the time of the execution of the instrument, as would authorize its registration.

2. MALICIOUS PROSECUTION — TAX TITLE — PROBABLE CAUSE.— One sued for malicious prosecution and false imprisonment of plaintiff, attempted to justify the alleged wrong by alleging ownership through a tax title of certain land, for cutting timber on which he had prosecuted and caused plaintiff's arrest.   Held:

   (1) That a charge instructing the jury that the tax title gave the defendant no right either to the land or the timber growing on it, and that its existence would not "constitute probable cause in favor of defendant for believing that the land or the timber thereon had been his property," was error.

   (2) The true question was, whether or not the tax deed tended to show the existence of probable cause for defendant to believe that he owned the land described in it, and the timber thereon, and this should have been left to the jury for the purpose of negativing malice, and in mitigation of exemplary damages.

3. CHARGE OF COURT.— See opinion for other charges of the court on the subject of malicious prosecution, in which, if error existed, it was an abstract error which could not have misled the jury, and afforded no cause of itself for reversal.

APPEAL from Panola.   Tried below before the Hon. A. J. Booty.

This was a suit for damages brought by John F. Needham against Horace McDaniel for false imprisonment and malicious prosecution, which resulted in a verdict for the plaintiff for $150 actual damages, and $250 as exemplary damages.

Appellee alleged that H. McDaniel, wickedly and maliciously contriving to injure plaintiff, destroy his character and reputation as a good citizen, expose him to trouble, scandal, costs, charges and vexation, and without having any reasonable or probable cause therefor, did, on or about the 10th of February, 1880, falsely, wickedly and maliciously complain to Malvin Collins, Esq., a justice of the peace, that plaintiff and one Joseph Rowe had stolen and carried away from and out of his possession, without his consent, some twelve or fifteen cypress logs belonging to complainant; on which information defendant caused plaintiff and Rowe to be arrested and held before said justice about February 10, 1880, to answer said charge; that defendant prosecuted plaintiff and said

Rowe on that charge before said justice; that the prosecution was gotten up by defendant for the purpose of taking from the possession of plaintiff and Rowe certain cypress timber, to wit, fifteen sticks and twenty-one sticks, which were then and there valuable and belonged to plaintiff and Rowe, and that defendant took the timber out of their possession. That defendant and one Henry McDaniel acted with A. H. Thompson, a constable of Panola county, in arresting plaintiff and Rowe under that complaint; that said plaintiff and Rowe were taken before the justice and tried upon the complaint, and that a final judgment of $50 and costs was rendered on the trial against each of them, which they refused to pay, and that they were taken, by order of the justice, by the constable to Carthage, Texas, a distance of about twenty-two miles, in the night, to be placed in jail in default of payment of the fine and costs; that they appealed from the judgment of the justice to the district court of Panola county, and that on August 31, 1880, a final judgment was entered in the district court dismissing the cases, on the ground that neither the justice nor the district court had jurisdiction thereof. Plaintiff alleged and prayed for the recovery of general damages, both actual and exemplary, and special damages of $100 for counsel fees, for said alleged malicious prosecution. In another count of said petition he alleged the utterance of slanderous words against him by defendant, causing damage, and also alleged false imprisonment of him by defendant, for which he prayed damages.

Defendant presented the following issues:

1st. A general demurrer to the petition.

2d. Special exceptions setting up the statute of limitations of one year.

3d. Special exception to the sufficiency of petition to maintain charge of slander.

4th. Exceptions to want of certainty in the petition charging damage, and how same accrued.

5th. The general denial.

6th. Plea of limitation of one year.

7th. Plea averring his ownership of the timber in question, and the unlawful taking thereof by plaintiff and Rowe. His complaint before said justice that plaintiff and Rowe had unlawfully taken and carried away his timber, and that he was not instigated by malice in making said complaint, and that there did exist reasonable and probable cause for said complaint and trial.

Among the instructions given was the following: " The tax title introduced in evidence by defendant, you are instructed, conferred

on the defendant no right either to the land described in said deed or to the timber, or any portion of the timber, growing on said land, and will not constitute probable cause in favor of defendant for believing the land, or the timber thereon, to have been his property."

*B. M. Baker* and *R. S. Hightower*, for appellant.

*Hazelwood & Hull*, for appellee.

WALKER, P. J. COM. APP.— We will not notice any other of the assigned errors than such as are presented for consideration in the brief of appellant's counsel. The third ground assigned is as follows: "The court erred in admitting in evidence over defendant's objection the power of attorney from Jesse Applewhite (the original grantee) to J. K. Williams, the same being offered in evidence under the statute as a recorded instrument, but having no certificate of proof or acknowledgment of its execution, such as is legally required to authorize it to have been recorded."

The certificate attached to the power of attorney is as follows:
"THE STATE OF TEXAS — *County of Panola.*

"Personally appeared before the undersigned authority, Jesse Applewhite, whose name appears to the within power of attorney, and in my presence signed, sealed and delivered the same for the uses and purposes therein contained. Given under my hand and seal of office this the 1st day of December, A. D. 1851.

"I. HADLEY ANDERSON,
"County Clerk."

The power of attorney was not authenticated in any of the modes designated by law authorizing the recording of it so as to give it the effect of an instrument duly registered. Art. 5008, Pasch. Dig., provides for that purpose as follows: "The proof of any instrument of writing for the purpose of being recorded shall be by one or more of the subscribing witnesses personally appearing before some officer authorized to take such proof, and stating, on oath, that he or they saw the grantor or person who executed such instrument subscribe the same,— or that the grantor or person who executed such instrument of writing acknowledged in his or their presence that he had subscribed and executed the same for the purposes and consideration therein stated; and that he or they had signed the same as witnesses at the request of the grantor or person who executed such instrument; and the officer taking such

proof shall make a certificate thereof, sign and seal the same with his official seal."

Art. 5007, Pasch. Dig., for the same purpose provides that " the acknowledgment of an instrument of writing shall be by the grantor or person who executed the same appearing before some officer authorized to take such acknowledgment, and stating that he had executed the same for the consideration and purposes therein stated; and the officer taking such acknowledgment shall make a certificate thereof, sign and seal the same with his seal of office."

The authentication of this power of attorney does not conform to any one of the modes prescribed by the statute in force at the date of authentication of the instrument. Neither does it conform to the substance and spirit of the law regulating the subject. The statute contemplates proof of the execution and delivery of the instrument either by the affidavit of a witness or witnesses who have been selected as such by the grantor or the maker of the instrument, and whose names as such are subscribed to the instrument, or else the acknowledgment made in person by such grantor or maker to the officer. This authentication is not the equivalent of either of these statutory modes, for the officer, in effect, purports merely to prove, as a subscribing witness might do, the execution and delivery of the instrument, without certifying that the maker had acknowledged the same before him. The officer is not a subscribing witness, nor does it appear from the certificate that he was called upon by the maker of the instrument to act as a witness to either attest the act of the signing and delivery of the instrument, or to certify by his acknowledgment that he had done so.

The registry system seems to contemplate that in order to affect the maker of an instrument by its registry, it must be effected through the instrumentalities of proof of his own selection. If the registry is to be made by proof of the act of making and delivery of it; it must ordinarily be made by those witnesses whom he has selected to subscribe the same as such, and if not thus proven, it must be established by his own personal voluntary acknowledgment.

The proof for purposes of registry cannot be supplied or superseded by the *ex parte* affidavit of a volunteer who may happen to be cognizant of the act of making and delivery; — one whom he has not selected or called on to state the facts in relation thereto. The fact that the county clerk was present when the maker signed, sealed and delivered the instrument, or that he appeared before such officer and in his presence did so " for the uses and purposes therein contained," do not constitute the officer a witness called to attest

those acts, nor are those facts equivalent to the formal and solemn acknowledgment which the statute contemplates. We think the objection ought to have been sustained.

It is assigned as error that the court erred in its charge in the following instruction: "The tax title introduced in evidence by the defendant, you are instructed, conferred on the defendant no right either to the land described in said deed or to the timber, or any portion of the timber, growing on said land; and will not constitute probable cause in favor of defendant for believing the land, or the timber thereon, to have been his property."

The defendant justified the alleged wrong of malicious prosecution by special answer, alleging ownership and possession of the land and timber, and that he sued out the writ on probable cause for so doing. The tax deed, under which he claimed, was offered, presumably, to support that defense, and probably as evidence in mitigation of exemplary damages, as tending to rebut the inference of malice.

Section 13 of article 8 of the constitution provides as follows: "Provision shall be made by the first legislature for the speedy sale of a sufficient portion of all lands and other property for the taxes due thereon, and every year thereafter for the sale of all lands and other property upon which the taxes have not been paid, and the deed of conveyance to the purchaser for all lands and other property thus sold shall be held to vest a good and perfect title in the purchaser thereof, subject to be impeached only for actual fraud; provided, that the former owner shall, within two years from date of purchaser's deed, have the right to redeem the land upon the payment of double the amount of money paid for the land."

The legislature, in pursuance of this provision, enacted laws giving effect to it in all of its parts, and which need not be here quoted. See R. S., art. 4756; id., Appendix, p. 17, sec. 21; p. 37, sec. 8.

What evidence of right to land thus conveyed may be required in actions to determine the validity of the tax deed as title to it, brought to recover the land or otherwise test the title claimed under it, it is not essential, we think, to decide in this case; for the question is not one involving the actual ownership of the land, nor that of the timber which gave rise to the prosecution of the plaintiff in this suit by the defendant for taking the timber.

The true question in reference to the effect to be given to the tax deed is whether or not it tended to show the existence of probable cause for the defendant to believe that he was rightfully possessed of the timber in question, and that he reasonably thought himself

entitled to maintain it by invoking legal process against a supposed trespasser. Possessed as he was of a tax collector's deed to the land, which the laws of the country declared should, under certain circumstances, be a perfect title to it, if he was not conscious of any invalidity which would impair or destroy the effect which the law imputed to it, however erroneous in fact may have been his opinion as to its virtue, he would have had probable grounds for the belief that his claim under it was not illusive and his supposed title a mere myth, and the deed but a mocking form. As the government, through its proper officers, had declared the land subject to sale for unpaid taxes, and in pursuance thereof had sold and conveyed it to him, he may have had reasonable grounds to believe that the recitals contained in it of the occurrence of all the acts of the state's officials requisite to constitute a valid condemnation and sale had transpired, and he having paid the purchase money and received the tax deed, those facts may reasonably have induced the belief on his part that he had acquired such title to the land as the tax collector could convey, and that it was a valid one. Probable cause, *vel non*, was a question of fact to be determined, under all the evidence, by the jury, and the tax title was competent evidence tending to establish the existence of such cause.

The right to recover for improvements under a suggestion of good faith is not made to depend, of course, on the validity of the title under which the possessor claims; the necessity for invoking the equitable principle and the statutory protection afforded by the law implies the want of a sufficient title; and we think the principle applicable to that class of rights affords a proper analogy for its application to the question under discussion. As to what constitutes a possessor in good faith, Chief Justice Wheeler remarked in Dorn v. Dunham, 24 Tex., 381, "is not dependent on the goodness of the title of the party in possession;" and in the course of that opinion he expressed a doubt as to the opinion he himself had rendered in Robson v. Osborn, 13 Tex., 306, as to the question there decided, holding that a tax title is inadmissible to sustain a suggestion of possession and improvements in good faith, without making additional proof as to the authority to make the sale.

Under previous tax laws, the statute made the assessor's deed *prima facie* evidence that the requirements of the law have been complied with in making the sale, but it is not thereby made evidence of a compliance with the prerequisites to the acquisition and exercise of the power to sell; the statutes formerly existing applied only to the proceedings to be had after the right and power to sell are acquired. Yenda v. Wheeler, 9 Tex., 408; Robson v. Osborn,

*supra;* Devine *v.* McCulloch, 15 Tex., 488; Kelly *v.* Medlin, 26 Tex., 48; Davis *v.* Farnes, 26 Tex., 296. How far the terms embraced in the constitution, and the statutes enacted since, may vary or alter the rule to be applied as to the legal effect of a tax deed, perfect and regular on its face, without the aid of other proof, we shall not discuss, but pretermit it as not being a material consideration in determining whether one holding under a tax deed may not have had probable cause to believe himself the owner of the land, or so far entitled to its use, and possession under it, as to warrant him in protecting timber cut by him against a trespasser.

The evidence was admissible for the purpose indicated, but its weight is to be judged of by the jury, and it would have been competent for the plaintiff to adduce evidence to rebut it, if he could do so, by showing facts militating against the probability that the defendant believed that he had a good title, or that he acted upon such a supposition in doing the acts complained of.

The evidence was undoubtedly admissible, too, for the purpose of negativing malice, and in mitigation of exemplary damages.

On the trial the defendant offered to prove that before he instituted the proceedings complained of he had examined the records of Panola county, in which the land was situated, to ascertain if there was recorded upon them any evidence of right or title in J. K. Williams or Snider (the plaintiff claimed the timber in dispute under a claim of title to the land under Mrs. Snider, to whom and her husband Williams had conveyed), and the evidence was excluded, over the defendant's objections, to which ruling defendant excepted, and assigns this ruling as error. We think this ground of error is well taken. Its admissibility rests upon similar reasons as those which required the tax deed to be admitted as evidence in behalf of the defendant.

It is assigned as error that the court charged the jury that "Any motive other than that of simply instituting a prosecution for the purpose of bringing a person to justice is a malicious motive on the part of him who instituted the prosecution."

The general charge on the subject of malice and probable cause was full and accurate, and in connection with the foregoing abstract proposition the court proceeded to add the following instruction: "If in this case the defendant did not prefer the criminal charge against the plaintiff in good faith, under a belief of his guilt, but, having no reasonable grounds for doing so, instituted the prosecution to get possession of the cypress logs mentioned in the pleadings, then he acted from an improper motive, and, in a legal sense, acted maliciously."

The foregoing objectionable paragraph follows the definition of malice thus given by the court: "Malice is the doing of a wrongful act intentionally, and, in a legal sense, any unlawful act done willingly and purposely to the injury of another, is, as against that person, malicious."

The court further charged the jury that "to entitle the plaintiff to recover, both malice and the want of probable cause must concur."

The evidence in the case suggested no other motive to which to refer the action taken by the defendant in prosecuting the plaintiff than either a desire, by use of the process of the law which he obtained and caused to be directed against the plaintiff, to reclaim and obtain possession of the cypress logs in dispute between them, or by actual malice against the plaintiff, such as a spirit of ill-will, hatred or revenge, or by that constructive malice which the law would impute to him if the act were done without any probable cause to warrant a reasonable suspicion of the plaintiff's guilt; or else a mere wanton, reckless spirit of mischief, regardless of consequences to the plaintiff, and whether the foundation of his complaint was well or ill founded. Inasmuch as the jury could not have applied that portion of the charge thus objected to, to other motives of action than those above enumerated, and as the charge as a whole gave full and sufficiently definite and accurate instructions applicable to all of these phases for considering the subject of an improper or malicious motive, it is apparent, we think, that the jury were not misled by any error, if error there was, in the abstract and comprehensive proposition objected to in the charge; for the legal operation and effect of any of the motives of action and conduct above indicated most assuredly would be characterized as malicious in the sense of the law. As applied to this case, the charge complained of, if erroneous, would have been merely abstract error, as the jury could not well be supposed to have been misled by it to the defendant's prejudice.

The remaining grounds assigned as error need not be considered, as the judgment must be reversed and the cause remanded, and on another trial the questions presented by them may either not recur, or if they do, we apprehend that the law upon them is sufficiently well settled to afford a satisfactory guide for their determination, without the necessity of their discussion at this time.

We conclude that the judgment ought to be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion adopted March 10, 1884.]