RACHEL STEVENSON ET AL. v. W. S. ROBERTS ET AL.

Decided May 18, 1901.

**1.—Independent Executor—Power to Mortgage.**

An independent executor having power under the will to sell the property of the estate for the payment of debts, has the power to mortgage the property to secure such debts.

**2.—Same—Abuse of Discretion—Purchaser Protected.**

Such mortgage is not rendered void nor are the rights of good faith creditors and purchasers under it affected by the fact that the independent executor may have abused his discretion in determining whether it was necessary to give the mortgage, or in selecting the property to be mortgaged.

**3.—Same—Improvements in Good Faith.**

Where land was devised to an independent executrix with remainder to plaintiffs, and such executrix, joined by her husband, mortgaged the land to secure debts of the estate, and under foreclosure of the mortgage the land was bought for the joint benefit of the purchaser and the husband, and one-half of it subsequently conveyed by such purchaser to the husband who sold it to defendant, the fact that defendant knew that the husband was in some way connected with the foreclosure sale would not in law make his purchase and occupancy of the land in bad faith so as to preclude him from recovering the value of the improvements placed by him thereon.

Appeal from Limestone. Tried below before Hon. L. B. Cobb.

*Kimball Bros. & Blackman* and *W. D. Brown,* for appellants.

*Farrar & Williams,* for appellees.

TEMPLETON, ASSOCIATE JUSTICE.—H. H. Stevenson was twice married. He died in 1890, and his second wife and children by each marriage survived him. At the time of his death he owned 46 head of cattle valued at $472; five horses and mules valued at $235; 21 head of hogs valued at $27; a steam engine valued at $475; a lot of gin and mill machinery valued at $527; other personal property valued at $730; one town lot valued at $25; 40 acres of land valued at $120; 140 acres of land valued at $420, and 420 acres of land, on which he resided with his family, valued at $2000. These are the values placed on said property by the appraisers of his estate. There were notes and accounts due the estate, aggregating $184.47. He owed D. Thomason $115. He also owed G. D. Johnson two notes, one for $275.72, due October 15, 1890, and the other for $275.73, due November 15, 1890, each bearing 8 per cent interest per annum.

Stevenson left a will by which his wife was appointed independent executrix of his estate without bond, and it was provided that no action should be had in the probate court except to probate the will and return the proper inventory. The will was duly probated; the inventory returned and approved, and the executrix qualified.

By the will the 420 acres of land was devised to Mrs. Stevenson for

life, and after her death to the children of herself and the testator. Twenty head of choice cattle, all the hogs, two work horses or mules and two mares and colts, were devised absolutely to the wife. The executrix was directed to sell the horses and cattle not specifically devised, the steam engine, and the 140 acres of land, and apply the proceeds to the payment of the debts of the testator, the balance arising from such sales to be divided between the children of the first marriage. All the property not specifically devised was to be divided between the children of the second marriage.

Soon after the death of her husband, Mrs. Stevenson married a man by the name of Thames. On July 1, 1891, Mrs. Thames, as executrix, joined pro forma by her husband, executed to Johnson, to secure the notes owing to him by the estate, a deed of trust providing for a trustee with power of sale, covering the town lot, the 40-acre tract of land, the 140-acre tract and 240 acres of the 420-acre tract. By the terms of the deed of trust the time for the payment of the notes was extended to October 1, 1891, and October 1, 1892, respectively, and it was further provided that default in the payment of the first note should mature the second note. In consideration of the extension it was agreed that the rate of interest should be increased from 8 per cent to 10 per cent per annum. The first note not being paid at maturity, the lands were sold by the trustee, and bought in the name of J. W. Allston. The 40 acres sold for $55; the 140 acres for $160, and the 240 acres for $250. It is not shown what the town lot brought. Allston bought the 240 acres for himself and Thames, each paying one-half the purchase money, and Allston deeded 120 acres of the land to Thames, who in turn conveyed to W. S. Roberts, who had notice, at the time of his purchase, that Thames was in some way connected with the trustee's sale. Allston sold the remainder of the 240 acres to C. T. Allston, who in turn conveyed to W. B. Reeves, who bought in good faith and paid a valuable consideration, without notice of any of the aforesaid facts. Thames and wife realized $100 on a disposition of the engine. They sold other machinery for $225, and a lot of cattle, including some of those devised to Mrs. Stevenson, for $125. Some of the cattle, it is not shown how many, died. They also collected $10 on debts due the estate, and paid the Thomasson debt of $115. The dates of these transactions do not appear. The vidence is not sufficient to show that the property set aside to pay debts was adequate for that purpose, or that it was practical to convert it into money and pay the debts.

The children of the second marriage, by their guardians, brought this suit against Roberts and Reeves to recover the lands bought by them from Thames and Allston. There was a trial by the court without a jury, and judgment was rendered in favor of the plaintiffs against Roberts, and in favor of Reeves against them. Roberts, who had pleaded improvements made in good faith, was allowed the value thereof. The plaintiffs alone have appealed.

The contention of the appellants is that the property directed by the

will to be sold and applied to the payment of debts was sufficient for that purpose; that the executrix had no authority either to sell or mortgage the land in controversy, and that the mortgage being void for want of power on the part of the executrix to make it, the appellee Reeves acquired no title by his purchase, even though he bought in good faith, without notice, and paid a fair consideration. The contention of the appellee Reeves is that the property designed by the testator for the payment of his debts was inadequate; that the executrix had authority to sell the land in controversy to pay the debt owing to Johnson; that the power to sell included a power to mortgage, and that Reeves, being an innocent purchaser, was entitled to be protected, even if the mortgage was improvidently given.

The evidence shows that Reeves was an innocent purchaser, and that the creditor Johnson acted in good faith, with no purpose other than to secure and collect his debt, and without notice of any abuse of power by the executrix. Under these circumstances, the rights of Reeves and Johnson, acquired through the sale under the mortgage, will be preserved, if the executrix had authority to give the mortgage. The executrix may have abused her discretion in determining whether it was necessary to give the mortgage, or in selecting the property to be mortgaged, but the fact, if it be a fact, would not render the mortgage void, or affect the rights of good faith creditors and purchasers under it.

The question of fact as to whether the property devised to pay debts was sufficient and available for that purpose was, in effect, decided by the trial court against the contention of appellants, and the evidence is not such as to justify us in disturbing the finding.

There can be no doubt that, in certain contingencies, the executrix had authority to make a direct sale of the land in controversy for the purpose of paying Johnson's debt. If the property set apart to pay debts was insufficient, or was incapable of being utilized for that purpose, then it was the duty of the executrix to make appropriate sales of other property in order to raise the necessary funds. While the land in controversy was devised to the appellants, subject to the life estate of Mrs. Stevenson, the same was charged by the terms of the statute with the debts of the testator. Rev. Stats., art. 1869. They took the title, therefore, subject not only to the life estate of their mother, but also to the claims of the creditors. Stevenson could not, by testamentary disposition of property legally liable for the payment of his debts, exempt the same from such liability. Stevenson had a right, under the statute, to withdraw his estate from the control of the probate court and provide for the administration and settlement thereof by an independent executor. Rev. Stats., art. 1995. When the will was probated and the inventory and appraisement returned and approved and the executrix had qualified, she became vested with the powers of administration and entitled to possession of the assets of the estate. As such executrix she had authority, without seeking the aid or advice of the probate court, to do and perform all acts necessary in the course of a due and proper

administration of the estate. Her power to sell was clear, and it is immaterial, in this case, whether the power was prudently exercised.

The appellants insist that, even if the executrix had authority to make a direct sale of the land for the purpose of paying Johnson's debt, the mortgage given by her on the land to secure the debt is nevertheless void for the reason (1) that an independent executor has no authority, except where the power is conferred by the terms of the will, to mortgage any of the assets of the estate; (2) that if the executrix had authority to sell the land, it was a power that could be exercised by herself alone, and could not be delegated to another, as was, in effect, done by authorizing a sale by trustee; (3) that, as the note secured by the mortgage is more onerous in its terms than the original notes executed by the decedent, the executrix exceeded her powers, and the mortgage is null and void. We will dispose of the objections in the inverse order in which they are stated.

The third ground of objection is not tenable. In Michigan there is a statute which authorizes the mortgaging of the property of an estate by an administrator, acting under order of the probate court. In Griffin v. Johnson, 37 Michigan, 91, an administrator obtained license from the court to mortgage property belonging to the estate, and executed a mortgage under the license. The note given by him for the debt secured by the mortgage contained the usual attorney's fee clause, and, on a suit to foreclose, the validity of the mortgage was attacked on the ground that the administrator had no power to bind the estate to pay attorney's fees. The objection was overruled, and it was held that the mortgage was valid to the extent of the original debt, even if a recovery for attorney's fees should be denied. We think that the rule stated is sound, and that it is applicable to this case. As the creditor Johnson is not shown to have received a sum sufficient to satisfy his original debt, the provision of the note given to him by the executrix regarding the payment of interest at an increased rate is immaterial.

Neither is the second ground of objection well taken. In Terrell v. McGown, 91 Texas, 244, relied on by the appellants, it was held that an independent executor, having the discretionary power to sell, could not delegate the power to an agent in such manner as to confer on him authority to exercise the discretion vested in the executor. The proposition there announced is not applicable to this case. The discretion of the executrix in the case at bar was exercised when she determined to mortgage. The question is, whether the executrix had authority to mortgage, not whether she could delegate to another her power to sell.

If the mortgage was valid, then the creditor had the undoubted right to foreclose, and, on a foreclosure by judgment, could have the land sold as under execution. Howard v. Johnson, 69 Texas, 655. A sale by trustee is one of the usual methods of foreclosure, and has the same effect as a foreclosure by suit. Besides, the power of the trustee is not discretionary, but ministerial. All his duties are particularly defined, and the manner in which the same shall be performed are specifically

prescribed by the terms of the trust deed. The rights of the estate can be protected as well at the trustee's sale as at execution sale. If the executrix had authority to mortgage the land, her power to provide for foreclosure by the usual methods follows as a natural consequence. In Williams on Executors, page 803, it is said that when an executor with authority to pledge the assets of the estate does so, the pledgee may sell the things pledged, if they are not redeemed within the proper time.

The crucial question in the case is presented by the objection that the executrix had no authority to mortgage the land in controversy. The affirmative of the proposition was presented to our Supreme Court by an ex-chief justice of that tribunal in Smithwick v. Kelley, 79 Texas, 564. The opinion in the case was delivered by Chief Justice Stayton, but the case was disposed of on other grounds, and the question in issue here was not decided. An examination of the authorities accessible to us had not led to the discovery of a decision of the question by any court. We may, perhaps, be pardoned for expressing a sense of the difficulties under which we labor in attempting to solve the problem before us.

In Faulk v. Dashiell, 62 Texas, 642, relied on by the appellee Reeves, the power of an independent executor to mortgage was upheld, but the decision appears to be based on the construction given to the language of the will. In that case, the will conferred on the executor authority to sell, but no specific power to mortgage was given. The Commission of Appeals, in an opinion approved by the Supreme Court, held that the language of the will disclosed an intention on the part of the testator to grant to the executor the power to mortgage.

In Quisenberry v. Mortgage Company, 92 Texas, 247, relied on by the appellants, it was held that authority to sell did not include the power to mortgage. The decision was based on the principle announced in Faulk v. Dashiell, supra, that the intention of the testator will control. The language of the instrument there considered was held to evidence an intention on the part of the maker not to confer a power to mortgage. It may be said, in passing, that the question of the authority of an independent executor was not involved in that case.

In the case before us it is clear from the terms of the will that it was not the intention of the testator that the executrix should sell or otherwise dispose of the land in controversy, and the power of the executrix to sell at all arises from the duty imposed on her by law to provide for the payment of the debts of the decedent. It is therefore not a question of intention, but one of power. As it was the intention of the testator that the land should be neither sold nor mortgaged, and as conditions arose authorizing a sale, the issue is whether the authority to make sale embraced a power to mortgage.

It has been said by the Supreme Court of this State that an independent executor "may do whatever is necessary for the full and complete settlement of the estate which he might do under authority and order of the court, if he was charged with the administration subject to its control by the will." McDonough v. Cross, 40 Texas, 280. See

also, Roy v. Whitaker, 92 Texas, 355. The question naturally suggests itself, has the probate court authority to license an administrator to mortgage the assets of an estate?

We are of opinion that the question must be answered in the negative. It may be conceded that in jurisdictions where there are no statutory courts of probate, and estates are administered in courts of chancery, the chancellor may, in the exercise of his equitable powers, authorize the mortgaging of property of estates. And it may be further conceded that our probate courts, within the limits of their jurisdiction, may exercise the equitable powers of a court of chancery. Still more, it may be admitted that a general and comprehensive jurisdiction of all matters pertaining to estates of deceased persons is conferred on the probate courts of this State. But the jurisdiction must be exercised as directed by statute. Where the statute prescribes a mode of procedure as to any particular matter, the mode prescribed and no other must be followed, and as our statute provides for the raising of a fund to pay debts by sales of property, such funds must be raised by sale, and not by mortgage. It is said in Woerner on the Law of Administration, page 323, that probate courts, created by statute, "can exercise such powers only as are directly conferred upon them by legislative enactment, or necessary to carry out some power so conferred. Unless a warrant for the exercise of jurisdiction in a particular case can be found in the statute, given either expressly or by implication, the whole proceeding is void; but where jurisdiction is conferred over any subject matter, and it becomes necessary in the adjudication thereof to decide collateral matters over which no jurisdiction has been conferred, the court must, of necessity, decide such collateral issues." The very question as to the authority of such courts to license an administrator to mortgage assets of the estate has been decided adversely to the claim of power in at least two states. Deery v. Hamilton, 41 Iowa, 16; Black v. Dressell's Heirs, 20 Kan., 153. The opinion in the case last cited was by Justice Brewer, now of the Supreme Court of the United States, a fact which adds weight to the case as authority. Moreover, the case was one of unusual hardship, for the estate had the benefit of the money obtained on mortgage. Nevertheless, the mortgage was held void.

It follows, therefore, that if the rule quoted from the opinion in McDonough v. Cross, supra, is a full and exact statement of the powers of an independent executor in all the relations he may occupy, such executor is without authority to mortgage the property of the estate he is administering. But neither in that case nor in the case of Roy v. Whitaker, supra, was the court considering the question before us, and no doubt the definitions there given of the powers of independent executors were intended as expressing the powers as such functionaries in the relations in which they there appeared. So construed, the expressions of the court in those cases are apt, sufficient, and appropriate. That they were intended to be so construed, we think is apparent from the learned opinion of Mr. Justice Brown in Roy v. Whitaker, wherein he cites and

approves the decisions in Langley v. Harris, 23 Texas, 569, and in Frisby v. Withers, 61 Texas, 138, in which it was held that an administrator under the will did not succeed to the rights of the executors named in the will to act in the capacity of trustees. We are also admonished of the danger of accepting so general a statement as a full, exact, and accurate definition of the powers of such representatives of estates, from the fact that similar statements, to the effect that the power of a community administrator is the same as that of an independent executor, may be found in our reports. Black v. Rockmore, 50 Texas, 98; Evans v. Taylor, 60 Texas, 425. Now, article 2227, Revised Statutes, confers on a community administrator powers which are nowhere given by statute to an independent executor. So, while the two offices approximate each other in power and similarity, the one can not be held to be, in all respects, the equivalent of the other. We think that the same observation applies to an independent executor and an administrator under a will. In this connection it is pertinent to call attention to the fact that a community administrator may mortgage the property under his control. Jordan v. Imthurn, 51 Texas, 276.

The question then recurs, whether the power of the executrix to sell the land for the payment of debts included the power to mortgage. It is certain that the power to mortgage can not be denied on the grounds that the executrix had no title to the land and possessed no sufficient estate in it. If she held the authority, without having any title or estate, to make an absolute sale, her lack of title and estate could not be urged as ground of want of power to mortgage. If she could convey the whole estate of the testator without being herself possessed of either title or estate, she could convey any part of the estate less than the whole, though she held neither title nor estate. The proposition is too clear for argument. It is true that if express power to sell was conferred either by will or statute, there might be room for discussion, but as the will and statute are silent in this regard, the question is beyond controversy. The power to sell for the purpose of paying debts is one of the functions of the office of an independent executor. The duty to provide for the payment of debts necessarily implies a power to make disposition of the assets of the estate to obtain the funds required.

At common law real estate was not subject to administration, and the executor took the legal title to the personal property of the testator, with power of disposition over it, while in Texas both real estate and personal property are alike subject to administration and charged with the debts of the decedent, though the title devolves on the devisees and does not vest in the executor. We have seen above that the executor in this State has authority to dispose of the property of the estate, either real or personal, for the purpose of paying debts, or to carry out the will of the testator, notwithstanding his want of title. That the power of disposition possessed by the common law executor did not depend on the title he held is disclosed by an examination of the nature of his title. In Carter v. Bank, 71 Maine, 448, it is said: "The interest which the

executor, as such, has in the personal estate of his testator is not the ab-solute title of an owner, else it might be levied on for his personal debts, but he holds in auter droit, as the minister and dispenser of the goods of the dead. As soon as he is clothed with a commission of the probate court, the executor is vested with the title to all the personal effects which the testator possessed at the instant of his decease; but the title is fidu-ciary and not beneficial, and his office is not that of an agent, but of a trustee." Thus it is apparent that the real power of disposition arises from the trust relation, and not from the possession of the dry legal title which appears to be conferred simply as an aid to a convenient exe-cution of the power. That the power may and does exist without being accompanied by the title is established by our own decisions. The power of a common law executor to sell includes the power to mortgage. Carter v. Bank, supra. And the power to mortgage is not based on the ground that the executor has the legal title, but the reason for the rule is thus stated: "As the executor may absolutely dispose of the testator's assets for the general purposes of the will, there seems no good reason why, in the exercise of a sound discretion, and presuming that the lan-guage of the will does not require an absolute sale, the executor may not raise the money required by a partial sale or mortgage of the as-sets." 2 Williams on Exrs., 803. The effect of these authorities seems to be that an independent executor is not a mere agent with limited power to do a particular thing in a specified manner, but is a trustee with discretionary power to make absolute sales of property belonging to the State for certain general purposes, and that the authority to make absolute disposition of the assets carries with it and includes a power to mortgage. It follows that unless the power of an independent executor to mortgage is denied by our statutes, it must be held that he has such power.

It is certain that there is no statute which expressly prohibits him from exercising the power. Article 2007, Revised Statutes, can not be said to do so, even by implication, for the purpose of that article seems to be simply to relieve the executor of the necessity of applying to the court for leave to sell, and by its terms the article in questions applies only to sales where the power to sell is given by the will. The object of this provision of the statute was not to confer a power to sell. Article 2009, Revised Statutes, provides that, "The administration of an estate under a will shall in all respects be governed by the provisions of the law respecting the administration of intestates' estates, except when it is otherwise provided by law, or by the provisions and directions of the will." It is doubtful if this provision was intended to apply to inde-pendent executors. It appears rather to be intended to apply to a ju-dicial administration by an administrator under the will, or by an exe-cutor without independent powers. It certainly can not have been intended to take from an independent executor his discretionary powers and subject him to the necessity of following the forms of the statute prescribed for the management of estates in the course of an ordinary

administration. We find no article of the statute which expressly or by necessary implication prohibits an independent executor from mortgaging the assets of the estate. On the other hand, we find that by article 1867, Revised Statutes, it is provided that, "The rights, powers, and duties of executors and administrators shall be governed by the principles of the common law, when the same do not conflict with any of the provisions of the statutes of this State." As at common law the power of an executor to sell included the power to mortgage, and as this principle of the common law is not in conflict with any statute of this State, the independent executor in Texas has the power of the common law executor to mortgage where, in the exercise of a sound discretion, such course is for the best interest of the estate.

The property of an estate in the hands of an independent executor is subject to seizure and forced sale at the suit of creditors. Rev. Stats., art. 1996; Roberts v. Comellee, 71 Texas, 15. The heirs and devisees, though not parties to the suit, are bound by the judgment against the executor and the sale under the judgment. Howard v. Johnson, 69 Texas, 655. Even the time allowed by law for the executor to answer is waived, if not insisted on by the executor. Lemmel v. Pauska, 54 Texas, 510. The assets of the estate in his hands are subject to garnishment. Weems v. Miles, 1 White & W. Con. Cas., sec. 1208. While it does not appeal to have been held that the assets could be seized under attachment, it would seem that such is the effect of the authorities cited. Therefore, so far as creditors are concerned, the independent executor stands in the shoes of the constituent. In these respects he holds upon the same terms as the testator. He may exercise the same discretion in selling to meet the emergency as the decedent could have exercised, if living. The property is unprotected in his hands, and occasion may arise when he can prevent a sacrifice of it only by pledging it as security for the debts.

The giving of a mortgage by an independent executor, instead of having the effect to bring about a forced sale of the assets of the estate, might result in preventing such sale, since the creditors, if not satisfied by mortgage, could procure judgment against the executor alone and have the assets seized and sold under execution under the judgment. The authority of such executor should correspond with his responsibility. The ordinary administrator, or the executor without independent powers, or the successor of an independent executor, do not occupy the responsible relation of the independent executor, hence the power may be refused them. The property in their hands is exempt from forced sale. No creditor can touch it until permitted to do so by order of the probate court. All sales must be approved by the court, and be made for a fair price. In such case the power to mortgage is not necessary, and because it was not given is no reason why it should be held that it was intended to be denied to the independent executor. It may be further noted, in this connection, that property in the hands of the common law

executor is subject to sale as under execution, and there the power to mortgage exists.

To say that the power is dangerous is begging the question. If it is too dangerous to be exercised, it can be prohibited by statute. Vast discretionary powers, which are everywhere recognized, are vested in independent executors, the wrongful employment of which would result disastrously to the rights of creditors and devisees. Our statute furnishes some measure of protection against such abuse of trust by authorizing the probate court to require bond of such executors in certain contingencies. The authority to mortgage is no more likely to be abused, and as adequate a remedy is provided against an improvident use of the power as in case of sale or the exercise of any other act of discretion.

But it may be said to be the duty of the executor to settle the estate, and that the giving of mortgages might have the effect to involve and extend, and not to settle, the administration. A mortgage given for purposes of speculation or investment, except where directed by the will, would be void, and a mortgage given even for a legitimate purpose, would be invalid, if not given in the exercise of a sound discretion. Creditors and purchasers claiming rights under such invalid mortgages would be protected only in case they had no notice of the indiscretion of the executor. The giving of a long time mortgage, or of mortgages having the effect to complicate the settlement of the estate, would generally carry on their face notice of their invalidity. So there is little practical danger in the proposition. The mere fact that the executor might abuse his discretion is no sufficient reason for refusing to concede to him the power.

We conclude that the mortgage given by the executrix in this case was not void, and that the appellee Reeves has a perfect title to the land claimed by him.

The only other question presented is whether the appellee Roberts was entitled to judgment for the value of his improvements. The contention of the appellants is that, as he bought with knowledge of the fact that Thames was in some way connected with the trustee's sale, he can not be held to have acted in good faith. We are of opinion that knowledge of said fact would not, as a matter of law, make Roberts' purchase and occupancy of the land in bad faith. He may not have known the legal effect of said fact and have bought the land and made improvements thereon in the belief that his title was perfect. He may have believed that the law permitted Thames to become a purchaser at such sale. The trial court held that, notwithstanding his knowledge of Thames' connection with the purchase at trustees' sale, Roberts believed and had good grounds for believing that he acquired a perfect title by his purchase from Thames, and that he acted in good faith in making his improvements, and we can not say that the holding is not justified by the evidence.

We find no error in the record and the judgment is affirmed.

*Affirmed.*