## McGRAW et al. v. FOXWORTH-GAL-BRAITH LUMBER CO.
### No. 3837.

Court of Civil Appeals of Texas. Texarkana. April 4, 1930.

Rehearing Denied April 10, 1930.

Webb & Webb, of Sherman, for appellants.

Head, Dillard, Maxey-Freeman, McReynolds & Hay and J. F. Holt, all of Sherman, for appellee.

LEVY, J.

Mrs. McGraw, wife of the appellant T. W. McGraw, died in March, 1923. Surviving her were her husband, T. W. McGraw, and five adult and four minor children. In January, 1924, T. W. McGraw duly qualified and gave bond under the statute as the community administrator of the estate of himself and wife. Lots 4 and 5 in block 2 of G. W. Gray's Second addition to the city of Sherman was the community property and the homestead of Mr. and Mrs. McGraw. In 1927 the homestead residence was destroyed by fire. T. W. McGraw desired to rebuild the residence on the lots, and executed the note, contract, and deed of trust herein stated. The note was in the sum of $6,000, dated September 29, 1928, payable on or before January 1, 1929, to Foxworth-Galbraith Lumber Company or or-

der, bearing 8 per cent. interest and stipulating for 10 per cent. attorney's fees if collected by suit. The following written contract was executed:

"The State of Texas, County of Grayson.

"This agreement between Foxworth-Galbraith Lumber Company, a corporation, and T. W. McGraw, of Grayson County, Texas, Witnesseth:

"T. W. McGraw has this day executed to Foxworth-Galbraith Lumber Company his note for the sum of Six Thousand Dollars ($6,000.00), payable on or before January 1st, 1929, and secured by deed of trust executed by him to H. F. Young, Trustee, on Lots Four (4) and Five (5) in Block Two (2) of G. W. Gray's Second Addition to the City of Sherman in Grayson County, Texas.

"The consideration for said note is lumber, building materials and money sold, advanced and to be advanced by the Foxworth-Galbraith Lumber Company to T. W. McGraw, used and expended by him in constructing a two-story brick veneer residence on the property above described.

"If the total value of the lumber, building materials and money heretofore and hereafter advanced to T. W. McGraw for said purposes shall amount to less than the sum of Six Thousand ($6,000.00) Dollars, said note shall be credited an amount equal to the difference between such total value and the amount of said note.

"Executed this the 29th day of September, A. D. 1928.

"Foxworth-Galbraith Lumber Company,
"By H. F. Young, Manager.
"T. W. McGraw."

To secure payment of the note, T. W. McGraw, acting both individually and in his capacity as community administrator, on September 29, 1928, executed a deed of trust to H. F. Young, trustee, on lots 4 and 5 in block 2 of G. W. Gray's Second addition to the city of Sherman. The Foxworth-Galbraith Lumber Company sued on the note to the amount of $4,289.85, claiming that it had furnished materials and money to pay labor in such sum, and to foreclose the lien of the deed of trust. T. W. McGraw individually and as community administrator, and the adult and minor children, were all made parties defendant to the suit. T. W. McGraw pleaded, in effect, that the note and deed of trust were procured from him to be left with a loan company for purposes of obtaining a loan only, and that the loan was not effected; that there was only a conditional delivery of the note and deed of trust to the lumber company; that the lumber company agreed to complete the house, and failed and refused to do so; that the note and deed of trust were procured from him by fraudulent representations. The court sustained exceptions to the matters pleaded by

the children. except the answer of general denial.

Claude Dilden intervened in the suit, claiming that he had furnished and set the tile in the bathroom of the new house and the defendant T. W. McGraw had contracted to pay him therefor, and that he had a statutory lien to secure the payment of the sum due.

After hearing the evidence the trial court peremptorily instructed the jury to return a verdict in favor of the plaintiff lumber company for the sum sued for against T. W. McGraw, with foreclosure of the lien and deed of trust against all the defendants; and in favor of the intervener against T. W. McGraw for the amount sued for, with foreclosure of the mechanic's lien against all the defendants. The defendants have appealed from the judgment.

 It is believed that the trial court did not err in giving the peremptory instruction. According to the testimony, a fire destroyed the family residence and T. W. McGraw undertook to rebuild the house. He intended to and did use in the new building a lot of material that he had already on hand, and intended to purchase more material as needed to finish the building. He proceeded to have the plumbing, electric wiring, concrete work, brick work, and painting done by different persons. On September 29, 1928, the date the note and deed of trust were executed, the building was about half completed, and up to that time T. W. McGraw had bought materials from the appellee lumber company to the amount of $1,368.70. There was no evidence that the lumber company agreed to erect or complete the house, and it was not contemplated that it should do so. There was no estimate made of materials or money, and there was no contract to furnish materials or money in any fixed amount. The contract in evidence was executed contemporaneously with the note and deed of trust. This contract expressly provided that liability on the note and the lien on the land should be limited to the amount of materials and money actually furnished to T. W. McGraw, not to exceed $6,000. The evidence conclusively shows strict compliance by the lumber company to their part of the contract, and that it had furnished materials and money to pay labor to T. W. McGraw to the amount of $4,289.85. There is no evidence that the lumber company upon being called on refused to furnish any materials or money to pay labor while the work on the house was in progress. The note, deed of trust, and the contract were all delivered to the lumber company for the purpose and intention of acting on them, and they were acted on by both parties. The deed of trust was placed of record, and Mr. McGraw knew it. The amount of materials and money furnished by the lumber company was unquestioned by Mr. McGraw in the trial.

556

The intervener also showed that he had furnished merchandise and labor and had complied with statutory requirements to fix a mechanic's lien on the land. In view of the conclusive circumstances there was no disputed fact arising for trial by the jury. The questions arising were matters of pure law. The contract, properly interpreted, did not obligate the lumber company to erect and complete the house, but to furnish to T. W. McGraw "building materials and money" needed by T. W. McGraw in furtherance of the contract made by him to have the building erected. T. W. McGraw was obligated to pay whatever sum that might be, not to exceed "the sum of $6,000.00" for the "building materials and money" that might be "sold, advanced and to be advanced" to him. The contract provides that if the total value of such building materials sold and money advanced to T. W. McGraw be in fact "less than the sum of $6,000.00," then and in that case "said note shall be credited an amount equal to the difference between such total value and the amount of said note." The husband can legally mortgage, as here done, the community property after he has duly qualified and given bond under the statute as community administrator. Jordan's Executors v. Imthurn, 51 Tex. 276; Astugueville v. Loustaunau, 61 Tex. 233; Stevenson v. Roberts, 25 Tex. Civ. App. 577, 64 S. W. 230. In the case of Texas Land & Mortgage Co. v. Cooper (Tex. Civ. App.) 67 S. W. 173, the husband surviving the wife does not appear to have qualified as community administrator. In legal principles a mortgage made to cover future debts is not void. Freiberg v. Magale, 70 Tex. 116, 7 S. W. 684; Law Sprinkle Mercantile Co. v. Hause (Tex. Civ. App.) 184 S. W. 737; Carleton Bros. v. Bowen (Tex. Civ. App.) 193 S. W. 732.

The children complain of exceptions sustained to their answer. It is believed that the court did not err in this respect. Having given bond under the statute (article 3667, R. S.), the father had the power to dispose of the property (article 3663, R. S.); and the only remedy available to the children was on the bond. That the amount of the bond does not equal the amount of the community does not affect the father's right of control. Jordan's Administrators v. Imthurn, supra. The father having qualified as community administrator and having mortgaged the lots, a sale thereunder could legally be made, although the lots were the community homestead and although the sale would operate to divest the right of occupancy. Ostrom v. Arnold, 24 Tex. Civ. App. 192, 58 S. W. 630. Therefore the right did not legally exist to the minor children to have the sale postponed for continued occupancy by them.

We have considered the several assignments of error, including the one complaining of the overruling of the application for continuance,

and conclude that each one of them should be overruled.

The judgment is affirmed.