## CONTINENTAL ASSUR. CO. v. GIBNER.

### No. 4920.

Court of Civil Appeals of Texas. Amarillo.
July 9, 1938.

Rehearing Denied Sept. 12, 1938.

R. T. Correll, of Perryton, and Works & Bassett, of Amarillo, for plaintiff in error.

Sanders & Scott and Howard F. Saunders, all of Amarillo, for defendant in error.

FOLLEY, Justice.

This is a suit between the Continental Assurance Company, plaintiff in error and defendant in the trial court, and C. A. Gibner, executor of the estate of L. L. Hughes, deceased, defendant in error and plaintiff in the trial court. L. L. Hughes acquired title to the land involved in this suit subsequent to the creation of a mortgage on said land in favor of the Continental Assurance Company by Edna F. Andrews, independent executrix of the estate of B. V. Andrews, deceased. The chief issues in controversy between the parties concern the authority of the independent executrix to give the mortgage in issue and whether or not the loan was usurious.

Prior to the death of B. V. Andrews on August 19, 1923, Andrews and J. R. Collard owned the 150 acres of land involved in this suit and described as the southeast one-fourth (SE¼) of Section No. 66, in Block 4–T, in Hansford County, Texas. Andrews left a will which was duly probated. In the inventory and appraisement,

an undivided one-half interest in the land was listed as a part of the community estate of B. V. Andrews, deceased, and his surviving wife, Edna F. Andrews. After the death of B. V. Andrews, his widow purchased from J. R. Collard and wife the other undivided one-half interest in the land. Under the will of B. V. Andrews, Edna F. Andrews was directed to pay all his just debts, given full authority to handle the testator's estate as an independent executrix, and empowered to sell and dispose of any of said property when necessary without the order of the probate court. Edna F. Andrews duly qualified as independent executrix under such will. On September 1, 1925, after the executrix had qualified as such, and after she had purchased the other one-half undivided interest in the land involved, she executed and delivered to Wm. L. Sharp a note in the sum of $3,500, payable to Sharp at the office of the Renfrew Investment Company, Woodward, Oklahoma, said note bearing interest at the rate of 6% per annum from its date until its maturity on September 1, 1932, after which time it was to bear interest at 10% per annum. Fourteen semi-annual interest coupons were attached to the note, representing the interest, payable each six months over the seven-year period of the loan. These coupons bore interest from their respective maturity dates at the rate of 10% per annum. The last of these coupons was in the sum of $105 and was due September 1, 1932, the same date the $3,500 note became due. The record shows that the first thirteen of these interest coupons had been paid before this suit was filed, leaving unpaid the principal note and the fourteenth interest coupon in the sum of $105 as the subject of this suit. Simultaneously with the execution of the principal note and the interest coupons, Edna F. Andrews also executed a deed of trust to R. O. Renfrew, trustee, upon the 150 acres of land herein involved to secure Sharp in the payment of said note. On October 19, 1925, Wm. L. Sharp sold the note and lien to the Continental Assurance Company, plaintiff in error herein.

On October 19, 1927, Edna F. Andrews conveyed by general warranty deed the 150 acres of land to S. P. Hughes. On February 8, 1928, S. P. Hughes and wife conveyed the land to L. L. Hughes by warranty deed, which specified that such conveyance was made subject to all liens and encumbrances of record against said land. On February 7, 1928, the said L. L. Hughes

also purchased said land at a sheriff's sale under an alias execution theretofore levied upon a judgment previously obtained by S. P. Hughes in the sum of $12,998 against Edna F. Andrews, as executrix of the estate of B. V. Andrews, deceased, and against said estate.

L. L. Hughes, as plaintiff in the trial court, filed this suit originally, and after his death, C. A. Gibner, executor of his estate, was substituted as plaintiff. The petition was a trespass to try title action against the Continental Assurance Company as the defendant in the trial court. For convenience, we shall give the parties their trial court designation.

The defendant, Continental Assurance Company, by way of cross-action, sought judgment upon its $3,500 note and the last interest coupon note in the sum of $105, and for foreclosure of its lien against the land. The plaintiff, C. A. Gibner, executor of the estate of L. L. Hughes, deceased, by supplemental petition in answer to defendant's cross-action, alleged that at the time the $3,500 note was given, Edna F. Andrews, as a part of such transaction, executed and delivered to H. A. Berg, as trustee, a second deed of trust upon the same land to secure the payment of a note in the sum of $245 of even date with the $3,500 note payable to R. A. Renfrew at the offices of the Renfrew Investment Company one year after date; that said note was given as a part of the consideration for the making of the $3,500 loan; that the whole transaction was usurious; and that all payments made upon such loan should be credited upon the principal note.

The trial court, without the intervention of a jury, entered judgment for the plaintiff against the defendant for a one-half undivided interest in the land, free from any lien of the defendant; decreed that the loan contract was usurious; and allowed the defendant recovery against the plaintiff for the amount of the note, less the sum of $1,634.50, representing the total interest payments made on said indebtedness and decreed a foreclosure on the remaining one-half interest in said land. Independent of the usury feature the effect of such judgment was that Edna F. Andrews, as independent executrix of the estate of B. V. Andrews, deceased, was without authority to mortgage the one-half undivided interest of her deceased husband, but could and did mortgage only her own one-half interest in the land. Such holding of the

court and the question of usury are presented as error by appropriate assignments.

In order to determine the authority of Edna F. Andrews, as independent executrix, to give the mortgage in question, we quote from the will of B. V. Andrews such portions as are pertinent, as follows:

"First: I will and direct that all my just debts be paid as soon after my decease as practicable.

"Second: After the payment of my just debts as above directed, I will, devise and bequeath, all the rest and residue of my property of whatever kind and character to my beloved wife, Edna F. Andrews, for her natural life and subject to the conditions hereinafter set out, to be used, owned, possessed and enjoyed by her and disposed of by her as she may see fit.

"Third: It is my will and intention and I so will and direct that my said wife, Edna F. Andrews, shall have, possess and enjoy said property only so long as she continues unmarried, but when she remarries, if she does remarry, then I will and direct that all of said property then owned and possessed by her shall pass to and vest in my children, Mary Edna Andrews, John Benjamin Andrews, Joseph Van Cleve Andrews, and in any future issue of myself and my said wife, Edna F. Andrews, share and share alike.

"Fourth: I further will and direct that in the event my said wife, Edna F. Andrews, should remarry as above set out and said property be vested in my children, then in case my said wife Edna F. Andrews, should be left again a widow and without sufficient income and property to care for her properly and in comfort, then said property shall pass to and vest in my said wife, Edna F. Andrews, * * *

"Fifth: I hereby nominate and appoint my said wife, Edna F. Andrews, as sole executrix of this my last will and testament and direct that she shall not be required to give any bond for the faithful performance of her duties as such executrix, and that she shall not be required to take any action in reference to said estate in the probate court or any other court having jurisdiction of my estate, except to probate said will and return an inventory, appraisement and list of claims, and I direct that she shall handle said estate as an independent executrix, and shall have power to sell and dispose of any of said property when necessary and without an order of the Probate Court."

At the time of the giving of the above mortgage the executrix was a widow. She was later married and testified at the trial under the name of Edna F. Asplin. The testimony shows that on September 1, 1925, the date of the mortgage, there was a large amount of unpaid community debts existing against the estate. It also shows that $1,070 of the $3,500 loan was used to pay J. R. Collard the balance due him for the undivided one-half interest in the land purchased from him by the executrix after the death of her husband. The testimony further reveals that the balance of such money derived from the loan was used in paying other indebtedness owing by the estate. The executrix testified that she used none of such money for her individual purposes or obligations. Moreover, we think the testimony clearly shows that all rights of the plaintiff in the property accrued after the execution of the $3,500 note and deed of trust lien.

As to the power of an independent executor to mortgage the assets of an estate for the purpose of paying the debts of the estate, we find the following language in Simkins Administration of Estates, 3rd Ed., p. 184:

"Where a power is given by a will, such as to sell and convey, to pay debts, or carry out any particular object not requiring the absolute conveyance of property, then unexpressed powers incident to the purpose are included in the grant, and such powers as may be necessary to effect the purpose may be exercised, but in determining the question in any particular case one must look to the intention of the testator, which must be read in the language used and the circumstances attending the transaction.

"An independent executor may mortgage property of the estate if necessary, within the exercise of a sound discretion, for the payment of debts due by the estate and the performance of his duties. This rule applies though the will may not so empower him or may not authorize a sale of the property."

On this same question, in Stevenson et al. v. Roberts et al., 25 Tex.Civ.App. 577, 64 S.W. 230, the court said [page 235]: "As at common law the power of an executor to sell included the power to mortgage, and as this principle of the common law is not in conflict with any statute of this state, the independent executor in Texas has the power of the common-law executor to mortgage, where, in the exercise of a

sound discretion, such course is for the best interest of the estate. The property of an estate in the hands of an independent executor is subject to seizure and forced sale at the suit of creditors. * * * The heirs and devisees, though not parties to the suit, are bound by the judgment against the executor and the sale under the judgment. * * * The assets of the estate in his hands are subject to garnishment. * * * While it does not appear to have been held that the assets could be seized under attachment, it would seem that such is the effect of the authorities cited. Therefore, so far as creditors are concerned, the independent executor stands in the shoes of the constituent. In these respects he holds upon the same terms as the testator. He may exercise the same discretion in selling to meet the emergency as the decedent could have exercised if living. The property is unprotected in his hands, and occasion may arise when he can prevent a sacrifice of it only by pledging it as security for the debts. The giving of a mortgage by an independent executor, instead of having the effect to bring about a forced sale of the assets of the estate, might result in preventing such sale, since the creditors, if not satisfied by mortgage, could procure judgment against the executor alone, and have the assets seized and sold under execution under the judgment. The authority of such executor should correspond with his responsibility."

For additional support of this proposition, see: Becker et al. v. American Nat. Bank, Tex.Civ.App., 286 S.W. 889, and Becker et al. v. Gans, Tex.Civ.App., 286 S.W. 893, and the authorities therein cited. In the Gans Case, the court held that a mortgage given by an independent executor of an estate owing past due debts was not only valid but that the lender did not have to show that the executor used the money to pay the debts in order for the lender to recover upon the loan contract.

In view of the above authorities and under the terms of the will in connection with the facts of this case, it is our opinion that the independent executrix had the authority to give the mortgage in question upon the whole of the land involved and that the court erred in not so holding.

It is also our opinion that the court erred in holding that the loan contract was usurious. The facts of this case bring it clearly within the rule announced by Judge Critz in Nevels et al. v. Harris, 102 S.W.2d 1046, 109 A.L.R. 1464, wherein the Supreme Court held that a contract for a five-year loan was not usurious unless it called for the payment of more than the maximum amount legally chargeable, ascertained by taking the real amount of the loan and adding thereto 10% interest annually. Over the seven year period of the loan contract in the instant case, the total amount of interest charged, inclusive of the $245, was far short of the amount allowed by law, and, although the contract carried an option to mature it upon default, it also provided that only accrued interest should be collected and in no event should the interest paid or agreed to be paid on the debt exceed 10% per annum. However, if the contract herein were tainted with usury the plaintiff is in no position to avail himself of such defense as we will later show. Therefore, we deem it unnecessary to go into detail in our discussion of the facts with reference to the question of usury.

As above stated, on October 19, 1927, Edna F. Andrews passed title to her interest in the property, and of that of the estate, to S. P. Hughes. The record shows that in addition to a cash consideration of $1,500, S. P. Hughes understood that the mortgage in question was outstanding and he agreed to assume it. Also, as above noted, on February 7, 1928, L. L. Hughes purchased this land at a sheriff's sale under an alias execution on the S. P. Hughes judgment against the Andrews estate. The title to said property having passed from the executrix and from the estate prior to the levy of the alias execution and the sale thereunder, such sale was a nullity. L. L. Hughes must have recognized such to be the case, for, on the next day, February 8, 1928, he purchased this land from S. P. Hughes by the deed above referred to in which a consideration of $1,000 cash was recited, and the further stipulation that "this conveyance is made subject to all liens and encumbrances of record against said real estate." The mortgage in question was on record at said time against said real estate and had been of record since September 5, 1925.

In 27 R.C.L. 289 et seq., pars. 91 and 92, we find this language:

"It is generally held that one who buys land subject to an existing mortgage, and who therefore obtains an abatement of the purchase price equal to the amount due on the mortgage, cannot attack the mortgage on the ground of usury. Under these cir-

cumstances, his position, on principle, is considered to be in no respect different from what it would have been had his vendor counted out in cash the sum specified in the mortgage, and placed it in his hands as his messenger, with direction to pay it to the mortgagee in discharge of the mortgage or lien; and this is true whether there was in terms an express promise to pay, or not, as a promise will be implied under such conditions. * * *

"The basis of the doctrine denying to a grantee the right to set up usury in a mortgage given by his grantor lies in the assumption that the mortgage was dealt with by the parties as if it were valid and legal in all respects and that the price paid was therefore abated to the amount of the mortgage debt, and it is only where the grantee of mortgaged property has purchased it on the basis of a clear title, and agreed, expressly or by implication as a part of the consideration, to pay the mortgage debt, that he is estopped from questioning the mortgage for usury."

In 2 Jones on Mortgages (8th Ed.), p. 283, it is said: "Even one who has bought subject to a mortgage, without assuming the payment of it so as to make himself personally liable, cannot contest the validity of the mortgage lien; for when the amount of the mortgage has been deducted from the amount of the consideration of the purchase, it is in effect an agreement that so much of the purchase-money shall be paid to the person holding the mortgage, and the mortgage is thus made a lien to the full amount of its face, although the mortgagee has in fact paid only a part of the consideration, or although the mortgage is subject to other defenses in the hands of the mortgagor. By conveying the land subject to a mortgage, the mortgagor provides for its payment in full out of the purchase-money. A purchaser of land upon execution, 'subject to whatever sum might be due upon the property by virtue of a certain mortgage,' cannot dispute the fact of the mortgage or its validity. But if the mortgage to which a conveyance is made subject is not deducted from the consideration or made a part of it, the recital does not estop the grantee from contesting its validity."

▮ Moreover, we think the burden was upon the plaintiff to show by competent proof that the mortgage debt in full was not deducted from the consideration of the deed before the above rule could be avoided. Kansas City Life Ins. Co. v. Hudson et al., Tex.Civ.App., 71 S.W.2d 574, writ refused. In further support of this proposition, in 41 C.J. 716, par. 755, it is said: "It is presumed that a purchaser subject to a mortgage bought the land at its value, less the amount of the indebtedness secured by the mortgage. So where a conveyance subject to a mortgage states a nominal consideration, the mortgage debt will be presumed to have been included in the purchase price."

▮▮ In this case it is evident that the cash consideration of $1,000 was only a nominal consideration by reason of the fact that a loan had been made theretofore on the property in the sum of $3,500. No proof was offered by the plaintiff that the mortgage debt was not deducted from the agreed price of the property. Such being the state of the record, the presumption prevails that the debt was a part of the consideration and, therefore, the plaintiff is estopped to set up usury. Bookhout et al. v. McGeorge, Tex.Civ.App., 65 S.W.2d 512; Volunteer State Life Ins. Co. v. Robinson et al., Tex.Civ.App., 74 S.W.2d 188, writ refused; Powell et al. v. Petteway, 69 Fla. 12, 67 So. 230; Key West Wharf & Coal Co. v. Porter, 63 Fla. 448, 58 So. 599, Ann. Cas.1914A, 173; Kennedy v. Brown, 61 Ala. 296; 66 C.J. 321, para. 326.

The facts of this case being uncontroverted and only questions of law having been presented, under our above holdings this case will necessarily be reversed and rendered. The judgment of the trial court is hereby reversed and judgment rendered for the defendant, Continental Assurance Company, establishing its indebtedness against the whole of said land in the sum of $5,853.52, such sum representing the amount of the original note in the sum of $3,500, plus the last interest coupon in the sum of $105, plus interest on the total of the last two sums from September 1, 1932, until June 5, 1937, the date of the trial court judgment, at 10% per annum, the said $5,853.52 also including $532.13 as 10% attorneys' fees at the date of the judgment; that $5,321.39 of said judgment shall bear interest from June 5, 1937 at 10% per annum until paid; that said attorneys' fees of $532.13 shall bear interest at 6% per annum from June 5, 1937, until paid; that defendant's lien be decreed as covering all of the property herein involved; and that

said lien against the whole of said property be foreclosed as against the plaintiff, C. A. Gibner, in his capacity as executor of the estate of L. L. Hughes, deceased, and as against said estate.